# CASES DECIDED

### IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BASHFORD V. ROSENBAUM HARDWARE COMPANY.

November 16, 1916.

Absent, Sims, J.*

1. MUNICIPAL CORPORATIONS—*Streets—Pedestrians—Negligence—Stepping in a Hole.*—A person passing along a sidewalk in a city is required to use ordinary and reasonable care and diligence to avoid danger, but what is such ordinary and reasonable care depends upon the circumstances of the particular case, and is a question of fact for the jury. A pedestrian upon such sidewalk may ordinarily assume that the sidewalk is in a reasonably safe condition for travel. He is not bound to keep his eyes constantly fixed on the walk, in search for possible holes or other defects, and one who, in stepping backward to look in an adjacent window, steps into a hole in the walk which has been negligently opened behind him and left exposed, without notice or warning, cannot be said to be guilty of negligence as a matter of law.

2. VERDICTS—*Conflicting Evidence—Negligence—Difference of Opinion of Reasonable Men.*—Whether a plaintiff in an action to recover damages for personal injuries has been guilty of contributory negligence is a question for the jury under proper instructions from the court, and their finding will not be disturbed where the evidence is conflicting, or is such that reasonable men might fairly differ as to whether there was such

---

* Submitted before Judge Sims took his seat.

negligence or not. Every reasonable inference should be made in favor of a verdict fairly rendered, under proper instructions from the court, in such a case, and it should not be set aside unless the evidence is plainly insufficient to support it.

Error to judgment of the Circuit Court of the city of Newport News, in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*T. J. Christian* and *J. Winston Read,* for the plaintiff in error.

*Charles C. Berkeley* and *Wm. A. Graff,* for the defendants in error.

CARDWELL, P., delivered the opinion of the court.

This action was brought by Frank Bashford against Rosenbaum Hardware Company (a partnership) to recover damages for personal injuries sustained by the plaintiff, which he alleges were caused by the negligence of the defendants.

At the first trial of the case the jury rendered a verdict in favor of the plaintiff for $353.65, which, upon the motion of the defendants, was set aside because the court was of the opinion "that the plaintiff was guilty of contributory negligence." On the second trial, no evidence being offered, a verdict was returned by the jury for the defendants, upon which the court entered judgment, and the case is before us upon a writ of error awarded the plaintiff.

There are no exceptions made a part of the record with respect to instructions given or refused by the trial court, or to the admission or rejection of evidence, so that the

only question presented is the propriety of the court's action in setting aside the first verdict.

It appears that the defendants were at the time of the accident to plaintiff for which he sues in the hardware business in the city of Newport News, having their place of business on the east side of Washington avenue, between Twenty-sixth and Twenty-seventh streets. They held under lease from one J. D. Bohlken a cellar or basement under his store building just opposite to their store on Washington avenue, and were the sole lessees thereof. Entrance to this cellar or basement was had by means of an opening in the sidewalk in front of the store building occupied by Bohlken, about four feet square, which opening, when not in use, was covered with two iron doors, and the cellar or basement was used by the defendants as a storage room in their hardware business. When these doors were open there was a chain attached to each of the doors on the ends thereof nearest the building occupied by Bohlken (which is known as the Darling building), which chain constituted the only barrier or protection afforded the public, in so far as the east or west side of said opening was concerned. This opening was almost in the middle of the sidewalk, and when the iron doors were closed the place was safe, but when open, and only then, it became dangerous to pedestrians passing over or along the sidewalk. Washington avenue is, as it appears, the principal business street of the city of Newport News, and pedestrians are continuously passing to and fro over the sidewalk at the place where the opening therein just described was located.

The plaintiff, a young man about thirty-three years of age, had been employed as foreman for the United States Shipping Company for about seventeen years, his business being to see that the ships of his employer were kept in proper condition, which duties required his presence on the water front, and he was very rarely on Washington avenue

at the place where he received the injuries of which he here complains—in fact, had not been there for a year prior to the day he received his injuries. On that day, about three o'clock in the afternoon, he was at the Warwick Pharmacy, on the corner of Twenty-sixth street and Washington avenue, the same side of the street as Bohlken's store, and crossing Twenty-sixth street he proceeded along the sidewalk towards Twenty-seventh street, and upon approaching the Darling building, in which Bohlken had his store, his attention was attracted to certain flags or pennants of various universities and colleges in the window of Bohlken's store. Bohlken's store is in about the business centre of the city, and the front of the store is divided into three sections, an entrance with a show window on each side, and in the centre of the entrance, on the building line, is a large revolving magazine roller. Just in front of the show window nearest to Twenty-seventh street is located the opening in the sidewalk above mentioned, through which and through which alone the defendants had access to the cellar under Bohlken's store, the short sides of this entrance being parallel to the building line and the other a shorter distance from the curb, making the smoothly paved sidewalk about 18 feet wide from the building line to the curb.

Upon plaintiff's attention being attracted to the flags or pennants in the window of Bohlken's store, he stopped in front of the window to look at them. This was the window opposite the entrance to defendants' cellar and the one nearest Twenty-seventh street. Pennants were also displayed in the window nearest Twenty-sixth street, but by reason of the magazine roller stand in front of the centre of the store, plaintiff was prevented from examining them from where he was standing, and not seeing a pennant of the University of Pennsylvania in the window nearest Twenty-seventh street, he stepped back to get a better view of the window nearest Twenty-sixth street, and in doing so

his foot caught in the chain hanging suspended in the top of the iron door nearest Twenty-sixth street and losing his balance, he fell into the opening. In falling over the chain the iron door was, of course, closed, and the plaintiff's neck was caught between the two iron doors, holding him thus suspended for several minutes and until he was released by persons who came to his relief. He describes the occurrence as follows: "I stepped back one step. My left foot went in the hole." "I found myself falling and I turned and tried to grab for the door and missed it and my weight went down * * * and this foot (right foot) caught under the chain." "I turned that way (to the left) and that door came down." "That door hit me under the neck." When asked if one door hit him from underneath the throat and one hit him from behind, he answered that "this door in front (indicating upon a photograph) strangled me unconscious, and this door (indicating the door next to 27th street) hit me here (indicating the rear of the left side of his neck)." Q. "The door nearest 26th street. The one that hit your throat?" A. "Yes, sir." Plaintiff does not undertake to say whether both doors were open or only one of them when he fell in the opening, his reply to that inquiry being, "I could not say. I did not notice."

On the afternoon of this accident to plaintiff defendants had two of their employes, a colored boy, Melvin, and a white boy, Walter Spence, carrying ladders and screens from the cellar under Bohlken's store to a room on the second floor of their place of business across the street, getting ready for the spring and summer sales of these articles, while another employe, Greshaw, engaged on the second floor, received and placed the ladders and screens as they were brought over by the two boys, Melvin and Walter Spence, which undertaking was still in progress when the accident to plaintiff occurred.

There was, as it appears, only one eye-witness to the occurrence—one Thomas Chambers, colored, a witness called by the defendants—who states that he was an employe of Bohlken, and was standing by the window looking out, and saw Bashford (plaintiff) examining the pennants in the window nearest Twenty-seventh street. At this time, according to the statements of Chambers, a colored boy opened the iron door over the entrance to the cellar nearest Twenty-sixth street and went down into the cellar. Witness further testified as follows:

"I saw him (plaintiff) when he fell down in the cellar." "What?" Ans. "I saw him fall down in the cellar." "What was the cellar doing open?" A. "It was a colored boy come there and hoisted up just one door—hoisted up the door towards 26th street." "Hoisted up the door next to 26th street?" A. "Hoisted up the door next to 26th street." "The other door was down?" A. "Yes, sir." "You were where?" A. "I was standing right there by the window." "By the window?" A. "Yes, sir." "Well, what was this boy doing there—the boy down in the cellar?" A. "I don't know, sir." * * * "Did you see him come out of the cellar?" A. "No, sir, I didn't see him come out." This latter question was put to the witness and he repeated the same answer thereto. After stating that the boy was a colored boy and that witness never saw him come back out of the cellar, he further describes how the accident to plaintiff occurred as follows: "I came out of the pool-room, and he was standing there looking in the window, and they hoisted up the door while he had his face to the window (pause) (By the court) "Go ahead. Then what?" A. "That is all that I know about it." "Well, how did he fall in—go ahead and tell." A. "He fell face foremost, one hand hung on the door while he was falling in. He fell by his neck."

W. C. Bohlken was standing in the door of Bohlken's

store and says he saw the door next to 27th street fall on the plaintiff and helped to get him out.

Seigel, who was running a pawn shop right across the street from the place of the accident, testified as follows:

"Well, I was standing somewhere near the entrance of my store there, and all of a sudden I heard a bang over there, and I ran out to see what it was, and I saw that the door had fallen. I ran across there. One of the doors was down and the other was on top of his (plaintiff's) neck, it seemed to me."

"Which door was down? One next to 26th street or the one next to 27th street?" A. "26th street."

"And the other was on him?" A. "Yes."

Plaintiff testified that a number of people were passing to and fro on the sidewalk and he did not notice the iron doors as he approached Bohlken's store, and that he was not aware that these doors or either of them were open prior to the time he fell into the opening. His theory, upon which his case was tried before the jury, is that one of the doors was opened behind him while he was looking in Bohlken's window nearest Twenty-seventh street, and he states that he was wholly ignorant of this trap which had thus been set behind him. The testimony given by Thomas Chambers, a synopsis of which appears above, is in entire accord with the evidence of the plaintiff, and it was a fair inference to be drawn by the jury from this evidence that the cellar doors were not open at the time plaintiff approached Bohlken's store, and that he was not aware that the door had been opened behind him; that one of the doors was opened behind him by a colored boy while his (plaintiff's) attention was riveted on Bohlken's display windows; and that this colored boy was at the time in the employ of the defendants and engaged in their work.

These questions of fact were submitted to the jury by instructions unobjected to, and the jury found that the

defendants were guilty of negligence—in fact, there seems to have been little 'or no dispute upon that question between counsel for the respective parties in the trial of the case in the lower court, and hence each instruction prayed for by the defendants dealt only with the question of the alleged contributory negligence of the plaintiff.

The jury's verdict was for the plaintiff, under instructions unexcepted to, as already stated, which submitted both the questions of the defendants' negligence and that of the plaintiff's contributory negligence to them, and, after a view by the jury of the premises, allowed by the court; therefore, to disturb this finding it was necessary for the trial court to have taken the view that there could be no difference of opinion amongst reasonable men as to the plaintiff's contributory negligence.

In this view we cannot concur, but do not deem it necessary to prolong this opinion by entering upon a more detailed analysis of the evidence than we have already given: "The general doctrine is that whether one had been guilty of negligence or not is a mixed question of law and fact, to be decided by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed or the evidence conflicting." *Cardwell* v. *N. & W. Ry. Co.*, 114 Va. 500, 77 S. E. 612, and cases cited.

In the first instruction given by the court in this case the jury were rightly told, in accordance with the law, as settled by numerous decisions of this and the courts in other jurisdictions, that the plaintiff had the right, in the absence of knowledge to the contrary, to assume that the sidewalk in question was in a reasonably safe condition, and he was not, as a matter of law, required to be on the lookout for defects; that if the jury believed from the evidence that the plaintiff, while exercising ordinary care, stepped into the opening in the sidewalk affording entrance

into the defendants' cellar, and that said opening was not properly guarded, and thereby received the injuries complained of, then they should find for the plaintiff.

Upon the evidence in the case, which was conflicting throughout, and after a view of the ground and surroundings where the accident to the plaintiff happened, the jury decided the issue which involved very largely the question of the credibility of the respective witnesses, in favor of the plaintiff—that is, that he was not guilty of contributory negligence, and to justify an interference with that verdict it would be, as remarked, necessary for the court to take the view that there could be no difference of opinion amongst reasonable men as to the plaintiff's contributory negligence. The fact that the plaintiff, about a year prior to the time he received his injuries, had been to Bohlken's store and knew of the presence of these doors in the sidewalk is of little or no importance in the case, for the obvious reason that there is a manifest distinction between knowledge of a defect or obstruction in a street or sidewalk which is at all times dangerous, and knowledge of an opening to a cellar, which, when closed, is perfectly safe. There is no dispute in this case that there was absolutely no danger to the plaintiff as long as the doors over the entrance to the cellar through the sidewalk remained closed, and it was only when one of the doors was negligently opened behind him, without notice, that the place became dangerous. His statement is that when he took a step backwards to get a view of the opposite window, his foot caught in the chain hanging from the top of one of these doors. These windows are, as counsel for the plaintiff argue, supposedly to attract the attention of the passer-by, and the plaintiff was only doing what men of ordinary care continually do, not only in Newport News but in all cities and towns of the Commonwealth; and when, in taking a step backward to look in an adjacent window, he stepped into

a hole in the sidewalk, which had negligently been opened behind him and left exposed, without notice or warning to him, such conduct does not, as a matter of law constitute negligence.

"A person passing along a sidewalk in a city is required to use ordinary and reasonable care and diligence to avoid danger, but what is such ordinary and reasonable care depends upon the circumstances of each particular case, and is a question of fact for the jury. A pedestrian upon such sidewalk may ordinarily assume that the sidewalk is in a reasonably safe condition for travel. To hold that such person is absolutely bound to keep his or her eyes constantly fixed on the sidewalk, in search for possible holes or other defects, would be to establish a manifestly unreasonable and wholly impracticable rule. * * *" *City of Chicago* v. *Babcock*, 143 Ill. 358, 32 N. E. 271; *Earl* v. *City of Cedar Rapids*, 126 Iowa, 361, 102 N. W. 140, 106 Am. St. Rep. 361; *Richmond City* v. *Pemberton*, 108 Va. 220, 61 S. E. 787.

It has been repeatedly held by this court, and it is the rule in all jurisdictions so far as we are advised, that whether a plaintiff in an action to recover damages for personal injuries has been guilty of contributory negligence is a question for the jury under proper instructions from the court, and their finding will not be disturbed where the evidence is such that reasonable men might fairly differ as to whether there was such negligence or not; and, as is so well expressed in the opinion by Burks, J., in *Blair & Hoge* v. *Wilson*, 28 Gratt. (69 Va.) 165: "Every reasonable presumption should be made in support of a verdict fairly rendered, and according to the long established, well settled rule by this court, such a verdict cannot be set aside as against the evidence, unless there is a plain deviation—unless the evidence is plainly insufficient to warrant the finding."

The record in the instant case has been given a most careful consideration, and we cannot say that contributory negligence on the part of the plaintiff is "a certain and incontrovertible inference from the evidence;" nor can it be said that the verdict of the jury acquitting him of contributory negligence is plainly against the evidence or plainly without evidence to sustain the finding; nor that the evidence is plainly insufficient to sustain the finding of the jury that the proximate and efficient cause of the injuries sustained by the plaintiff was the negligence of the defendants; and, therefore, upon the whole case, we are of opinion that the judgment of the circuit court should be reversed, and this court will enter judgment for the plaintiff (plaintiff in error here) for the amount of the verdict in his favor found by the jury at the first trial of the cause.

*Reversed.*