# Richmond

CITY OF STAUNTON, ETC. V. FLORENCE A. KERR.

March 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*J. M. Perry* and *Peyton Cochran*, for the plaintiff in error.

*Charles J. Churchman* and *John D. White*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Mrs. Florence A. Kerr, of the county of Augusta, brought suit against the city of Staunton to recover damages for injuries sustained by her because of a defect in the sidewalk on North Central avenue in said city, which constituted, as she claimed, negligent conduct on the part of the city.

The case was tried before a jury, which rendered a verdict in favor of the plaintiff for the sum of $3,000, which verdict was sustained by the trial court.

The case is before this court upon a writ of error and supersedeas awarded by it. The parties will be referred to as they were related in the trial court.

The defendant brings error by the following assignments:

1st: The circuit court erred in refusing to set aside the verdict upon the ground that the plaintiff was guilty of negligence which contributed to her injuries, in this, that the depression in the sidewalk which she claims occasioned her fall was patent and obvious and readily to be observed by a pedestrian exercising ordinary care, yet the plaintiff nevertheless did not avoid stepping upon it.

2nd: The circuit court erred in refusing to set aside the verdict upon the ground that the existence of the alleged defect in the pavement did not constitute negligence on the defendant's part.

The plaintiff, while walking south on Central avenue in the city of Staunton at about half past one o'clock in the afternoon of October 3, 1930, fell on the sidewalk and sustained injuries of which she complained.

The weather was fair, the day clear, the sun shining

scarcely obliquely, and the concrete pavement upon which she was walking was unobscured by the shadows of buildings, trees or anything else athwart it.

A Mrs. Sites, a companion of the plaintiff, was, at the time walking with her and they were talking. The plaintiff had some parcels in her hand and her pocket book, which it is not claimed interfered with her vision. At the time of her fall she was approaching the intersection of an alley with the pavement, where the pavement inclined slantingly to the grade of the street. She said that just before she stepped into the depression, to be presently described, she saw that no car was coming out of the alley. Just near the curb of the sidewalk, fifteen inches north of the line of the alleyway the iron cover of a water meter box was in the pavement. This cover was even with the level of the sidewalk and had no projecting rim or flange. Along the inner edge of the meter box there was a depression in the pavement, which some of the plaintiff's witnesses called a hole. Three of the defendant's witnesses, Rice, superintendent of the water department, Hall, superintendent of streets, and Davis, chief of police, immediately after the accident made measurements of this depression and they testified that it was two feet in length, parallel with the curb, and seven inches in width crosswise of the pavement. Its average depth was one inch; its greatest depth was one and one-half inches and on either side of the depression it was one-half inch in depth.

The plaintiff and a number of her witnesses testified that the depth of the depression was much greater. The plaintiff placed the depth at from two and one-half to three inches and that she caught her foot in the depression, which was rough and jagged, which was evidenced by the fact that her shoe was scratched or torn. Mrs. Sites testified that the depression was two or three inches deep, which was her guess as she looked back at it. Mr. Knowles, for the plaintiff, testified that the depression was from two to four inches deep and Mr. Shreve, another witness for the plain-

tiff, testified that the depth was from one and one-half to two inches around the meter box. The testimony of all of these witnesses was, at best, but approximation, as none of them measured the depression but only saw it rather casually.

The plaintiff in accounting for her fall said: "When we got to this place, I was walking along and had a package about that long and that wide—some union suits for the little boy, and had another little package and my pocket book. I was walking along like that. I stepped in this place —I had just paused a minute there, and there was no car coming out the little alley, there was nothing coming, and I taken another step forward and was thrown."

A portion of her testimony is as follows:

"Q. There are no trees or shadows or things that cause shadowing on that pavement at that point, are there?

"A. I can't say.

"Q. You know that that pavement at that time of day was in the broad bright sunlight, don't you?

"A. Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. You mean a hole anybody could have seen?

"A. Anybody could have stepped into it.

"Q. And anyone could have seen it; you mean a hole big enough for folks to see, do you mean that?

"A. No, sir; I mean a depression I stepped in.

"Q. Big enough for folks to see, do you mean?

(No answer)

"Q. Answer the question please?

(No answer)

"Q. Was it a depression big enough for folks walking along there to see?

"A. I guess that it was.

"Q. Why didn't you see it?

"A. I didn't see it until after I fell.

"Q. Why didn't you?

"A. Because I guess I was just talking as I walked along.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Q.   You were just talking and you reckon therefore you just didn't see it?

"A.   I was just walking along, looked down and in a few more steps I stepped in it and fell.

"Q.   Why didn't you see it when you looked down?

"A.   I didn't see that place.

"Q.   You didn't look at it, did you?

"A.   I never saw the place I stepped in.

"Q.   Was it big enough to see if you had been looking?

"A.   I can't say.

"Q.   You don't know whether it was or not?

"A.   No, sir.

"Q.   Where did you get this idea that it was two and one-half or three inches deep—from Mr. Knowles—or is it your own measurement?

"A.   Just looking at it when they picked me up.

"Q.   It was very clear to be seen then when they picked you up?

"A.   Yes, sir.

"Q.   It was in clear view—the pavement wasn't wet or slippery, was it?

"A.   No, sir."

Mr. Knowles, who testified for the plaintiff, said, in part, as follows:

"Q.   Was that hole so big that anybody could see into it?

"A.   Sure.

"Q.   It was broad daylight?

"A.   Yes, sir."

Mrs. Sites, plaintiff's companion, testified that after she helped the plaintiff up she noticed what had caused the fall and said in part:

"Q.   And the place was very plain to be seen then?

"A.   Yes, sir."

It is very plain to us that the plaintiff was proceeding along the sidewalk in a listless, unobservant way.  The law requires her to be reasonably observant.

In the case of *Osborne* v. *Pulaski Light and Water Co.,* 95 Va. 16, 27 S. E. 812, it was said: "Travelers along the public streets are not bound to keep their eyes at every moment on the pavement, but they are bound to exercise reasonable and ordinary care to avoid danger. The evidence in this case shows that the plaintiff was guilty of gross negligence, that she exercised no care or concern for her own safety, and in consequence of her own lack of ordinary prudence she received the injuries complained of."

In the case cited the plaintiff in the daytime fell into a ditch across a sidewalk. She said that while she was walking along she turned her face to look at some flowers in a yard, and if she had been looking in front of her she would have seen the ditch.

See also the following cases: *City of Richmond* v. *Courtney,* 32 Gratt. (73 Va.) 792; *Portsmouth* v. *Lee,* 112 Va. 419, 71 S. E. 630; *Lerner* v. *Philadelphia,* 221 Pa. 294, 70 Atl. 755, 21 L. R. A. (N. S.) 614.

In the Pennsylvania case last cited the court said: "We have gone very far in holding municipalities liable for injuries received in consequence of defective pavements, but never yet so far as to excuse the pedestrian using the pavements from the duty of exercising ordinary care. When one abandons the use of his natural senses for the time being, and chooses to walk over a pavement by faith exclusively, and is injured because of some defect in the pavement, he has only himself to blame. It is, of course, the duty of municipalities to see that the pavements along its streets are reasonably safe for public use; but they are not insurers of the safety of those using them. * * * Irregularities in grade, unevenness in surface, sharp depressions at crossings, accidental displacement of brick or stone, and many other things which may or may not be defects, but yet sufficient in themselves to cause accident to the unwary, are so common and usual that it is the duty of the pedestrian to be observant of such fact, and not to walk blindly. If through no fault of his he is prevented from seeing the

defect, obstruction, or whatever it may be, which it was the duty of the municipality to have corrected, and injury results to him, he is entitled to claim compensation. When the accident occurs in broad daylight, in consequence of an open and exposed defect in the sidewalk, the burden rests upon the party complaining to show conditions outside of himself which prevented him seeing the defect, or which would excuse his failure to observe it. If such conditions exist, there is excuse for walking by faith. When they do not exist the law charges the party with failure to do what was required of him, * * *. One is not required in walking along a traveled highway to keep his eyes fastened upon the ground continually to discover points of possible danger, nor is it necessary that he should in order to avoid exposed pitfalls lying directly in the path before him; but the law does require that he be observant of where and how he is going, so as to avoid dangers which ordinary prudence would disclose. * * *"

We think that the plaintiff was guilty of contributory negligence which bars her recovery.

As to the second assignment of error we think it is of equal avail for the defendant; i. e., that under the circumstances and facts of this case as shown by the evidence the defendant was not guilty of any primary negligence.

It was, of course, the duty of the city of Staunton to keep its streets and sidewalks in a reasonably safe condition. In this case it performed this duty, despite the presence of the depression described.

It is still the law in this State that municipalities are not insurers of the safety of pedestrians using their streets and sidewalks.

The recent case of the *City of Roanoke* v. *Sutherland,* 159 Va. 749, 167 S. E. 243, and the cases there cited, are controlling on the point under discussion, in this case, in which the facts as to the city's alleged negligence are so similar.

It follows that we reverse the judgment of the lower court and enter judgment for the defendant.

*Reversed.*