# Staunton

## N. W. Schlossberg v. T. H. Brugh.

September 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and
Eggleston, JJ.

The opinion states the case.

*Hoge & Austin*, for the plaintiff in error.

*John W. Wright* and *T. W. Messick*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

T. H. Brugh, the plaintiff below, while walking westwardly along the sidewalk on Church avenue, in the business district of the city of Roanoke, tripped over an iron door covering the entrance leading from the sidewalk into the basement under the adjacent building, fell into said opening, and was injured. He instituted this action at law against N. W. Schlossberg, the person in possession of the abutting premises, to recover damages for his personal injuries. The trial resulted in a verdict of $1,500 in favor of the plaintiff, on which the lower court entered judgment. The matter is before us

on a writ of error granted to Schlossberg. The parties will be referred to as they appeared in the court below.

The principal assignment of error is that the evidence is insufficient to support the verdict, that the defendant was not guilty of any primary negligence, and that, in any event, the plaintiff was guilty of contributory negligence which barred his recovery.

The opening in the sidewalk had been constructed pursuant to the necessary authority from the city. It was covered by two solid iron doors, each approximately four feet long by eighteen inches wide, running across the sidewalk. These doors were so hinged as to permit them to open outwardly and stand at an angle of forty-five degrees to the pavement. The doorway occupied about one-half of the width of the eight-foot sidewalk.

Shortly before the accident, which occurred at about 5:20 P. M. on December 19, 1933, the doors had been opened by the defendant's employee who was in the basement attending the furnace. A single piece of lumber six inches wide, four inches thick, and about eight feet long, was laid across the opening from one door to the other. Except for this the doorway was not guarded, marked, or lighted.

An ordinance of the city of Roanoke provided: "And no cellar-way, coal-hole, or other hole of like nature opening in or upon the public streets or sidewalks shall be allowed to be open or remain open unless guarded by bars or otherwise, under a penalty of not more than five dollars for each offense, to be imposed upon the person causing or permitting the same."

The plaintiff had been standing with a companion at the entrance to a poolroom on the south side of Church avenue. He was waiting to catch a bus which he momentarily expected to pull up at the bus stop a short distance west of where he was standing. It was raining and the street lights were not on.

In a few minutes the bus drew up to the station and the plaintiff started for it. He came from the entrance to the poolroom, turned left and walked westwardly along the

sidewalk. The first building on his left, and adjacent to the poolroom entrance, was a barber shop. The next building to the westward was a restaurant, immediately in front of which was the doorway leading into the basement. This doorway was eighteen feet from the poolroom entrance. Both the barber shop and restaurant were occupied and lighted on the interior.

As the plaintiff passed the barber shop something therein attracted his attention. He glanced in the window but continued walking. With his attention still directed towards the window, and looking back over his shoulder, he continued up the street until he tripped over the door and fell into the basement entrance located just beyond the barber shop. From the time he left the place where he was standing in front of the poolroom until he fell, he never once looked in the direction of the obstruction towards which he was walking.

As to the primary negligence of the defendant we think the evidence is ample to support the verdict of the jury. It is undisputed that the opening was unguarded except for the single wooden bar leading from one door to the other. Certainly the jury was justified in finding that this was not a sufficient guard (if, indeed, it was ever intended as such) as was required by ordinance.

The books are full of cases holding an abutting owner liable for injuries sustained by a pedestrian because of the failure to properly safeguard such openings. A number of such cases are collected in an annotation in 70 A. L. R., page 1366.

The only serious question is whether the plaintiff was guilty of such contributory negligence as to bar his recovery.

Accidents of this character are frequent and the principles pertaining thereto are well settled. A pedestrian is required to exercise only ordinary care for his own safety. In the absence of knowledge to the contrary, he may assume that the street throughout its entire width, or so much thereof as is intended for travel, is in a reasonably safe condition, and he is not required as a matter of law to be on the lookout for defects or obstructions either by day or by night. *Jones* v.

*Massie,* 158 Va. 121, 128, 163 S. E. 63; *City of Radford* v. *Calhoun,* 165 Va. 24, 181 S. E. 345, 348, 100 A. L. R. 1378; *Whitten* v. *McClelland,* 137 Va. 726, 734, 120 S. E. 146.

Whether a pedestrian has exercised ordinary care for his own safety under the circumstances of the particular case is generally a question for the jury. 13 R. C. L., page 521, section 433; *Bashford* v. *Rosenbaum Hardware Co.,* 120 Va. 1, 10, 90 S. E. 625. Only when the facts are undisputed, and but one reasonable inference can be drawn from them, does the question of the contributory negligence of the pedestrian become one for the court and not for the jury.

In *Osborne* v. *Pulaski Light & Water Co.,* 95 Va. 16, 27 S. E. 812, we held the plaintiff guilty of contributory negligence as a matter of law where, in the daytime, she fell into a ditch eighteen to twenty-four inches wide and two and one-half feet deep, running across a sidewalk. She testified that as she walked along the street she was looking not ahead but into a yard where some flowers had attracted her attention, and that had she been looking to the front she would have seen the ditch.

We there said (95 Va. 16, 17, 27 S. E. 812): "This court has repeatedly held that a traveler on a public street is held to the exercise of ordinary care. He has the right to assume that the sidewalk is in a safe condition, and is not required to anticipate danger, but this does not excuse him from the exercise of his own faculties. When reasonable attention on his part will enable him to avoid an open and obvious danger, he can not recover if he has neglected to exercise that ordinary and reasonable care which is expected and required of every one."

This case was recently approved by this court in *Staunton* v. *Kerr,* 160 Va. 420, 168 S. E. 326, wherein it was held that a pedestrian was guilty of contributory negligence as a matter of law when she stepped into a hole in the sidewalk, two feet long, seven feet wide, and from one to three inches deep, which she admitted she would have seen had she but looked. That accident likewise happened in the daytime.

In *Staunton* v. *Kerr, supra,* we cited with approval *Portsmouth* v. *Lee,* 112 Va. 419, 71 S. E. 630, wherein the plaintiff was held guilty of contributory negligence as a matter of law in stumbling over a hose stretched across the cross-walk, about three feet from the curb. This accident happened at night.

In *Moore* v. *City of Richmond,* 85 Va. 538, 8 S. E. 387, the plaintiff was held guilty of contributory negligence where at night he fell into a ditch three feet wide, six feet deep across the sidewalk. The ditch was midway between two gas lamps, eighty feet apart. There the plaintiff admitted that he would have seen the hole if he had looked.

Whatever may be the rule in other jurisdictions, we think it is clearly established in Virginia by the decisions which we have just reviewed that a pedestrian, who, through mere inattention, fails to avoid in the street a danger which is plainly visible to him, if he but looks in that direction, is guilty of contributory negligence as a matter of law.

The decision in the case at bar, then, must turn on whether or not the established facts bring it within this rule. Were the doors plainly visible to the plaintiff if he had but looked in their direction? Was it through mere inattention that he failed to see the obstruction? If these questions are to be answered in the affirmative then clearly he was guilty of contributory negligence and can not recover.

Our conclusion is that the evidence establishes without question that the doors were plainly visible to the plaintiff if he had but looked in their direction.

The direct testimony of every witness who spoke on the subject is to that effect. While it is established by the jury's verdict that the street lights were not on, it is undisputed that the interiors of the barber shop and restaurant were brightly lighted. The witnesses for both the plaintiff and the defendant said that these lights made the basement doors on the sidewalk plainly visible.

There were several eyewitnesses to the accident. Two of these were standing in the barber shop and one in the restaurant. All were looking out of the windows. One

testified for the plaintiff and two for the defendant, but all agreed that the doors were plainly visible and that they saw the plaintiff fall over the obstruction as he walked up the street looking back over his shoulder.

One of the plaintiff's witnesses, an employee in the barber shop, testified that the doors were visible, under the conditions then existing, for half a block. This is corroborated by another employee of the barber shop who testified for the defendant. One of the employees in the restaurant testified for the defendant to the same effect.

Just before the plaintiff left the entrance to the poolroom he had been talking to a friend, Hicks. This witness was still standing in front of the poolroom as the plaintiff walked up the street and saw the accident. He testified that the doors were visible to him from his position of eighteen feet therefrom.

There is no direct testimony that the obstruction was not plainly visible. The only evidence from which such might possibly be inferred is the testimony of the plaintiff himself. He said that it was raining, and that "It was dark and you could not see up the street; the street was black, even if you had been looking."

But how can this be accepted as proof that the doors were not plainly visible? Certainly the plaintiff does not know this, because, according to his own statement, he never once looked in the direction from the time he left the poolroom entrance until he fell. During the entire time he was traversing this eighteen feet he was looking to his left into the barber shop. A part of the time he was actually looking back over his shoulder, since the obstruction over which he stumbled was beyond the barber shop. Indeed, he so testified.

We take it, then, as clearly established by the testimony of the witnesses, both for the plaintiff and the defendant, that the doors were plainly visible to the plaintiff had he but looked in that direction.

It is undisputed that the plaintiff's failure to see the doors was due to the fact that he was looking back over his shoulder into the barber shop window. This is his own testimony and

is confirmed by that of eyewitnesses for both the plaintiff and the defendant.

We think the circumstances here are strikingly like those in *Osborne* v. *Pulaski Light & Water Co.*, *supra*. There the plaintiff fell into a plain and open obstruction because she was looking, not ahead but off to the side at something which had attracted her attention. There was nothing to prevent her seeing the obstruction if she had looked towards it. Mere inattention was the cause of her failure to see the obstruction. The same is true here.

What we said in that case (95 Va. 16, 18, 27 S. E. 812) is pertinent here: "Travelers along the public streets are not bound to keep their eyes at every moment on the pavement, but they are bound to exercise reasonable and ordinary care to avoid danger. The evidence in this case shows that the plaintiff was guilty of gross negligence, that she exercised no care or concern for her own safety, and in consequence of her own lack of ordinary prudence she received the injuries complained of." See also, *Staunton* v. *Kerr*, 160 Va. 420, 425, 168 S. E. 326.

If the plaintiff in *Staunton* v. *Kerr*, *supra*, was guilty of contributory negligence as a matter of law in not seeing a depression two feet long, seven feet wide, and from one to three inches deep, because she was talking to a companion, then certainly the plaintiff in the instant case was likewise guilty of contributory negligence as a matter of law in failing to see this iron door, four feet long and standing nearly eighteen inches above the level of the pavement, because, forsooth, as he says, he was "looking back into the barber shop."

The circumstances here are quite different from those in *City of Radford* v. *Calhoun*, 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378. There the attention of the driver of the car was momentarily diverted by an approaching automobile, and while endeavoring to prevent a collision therewith he struck an obstruction which he would otherwise have seen. He could not avoid both dangers at the same time.

*Bashford* v. *Rosenbaum Hardware Co.*, 120 Va. 1, 90 S. E. 625, strongly relied upon by the plaintiff, is not in point. In

that case while the plaintiff was standing looking into a window, a basement door was opened immediately behind him and without his knowledge. He stepped backward from the window into the opening and was injured. There he did not know that the door had been opened and had no opportunity of seeing it.

In the instant case the plaintiff walked from the poolroom entrance, a distance of eighteen feet, with the open cellar doors in full view, and gave no reason for not seeing them except that he was looking, not where he was going, but over his shoulder into the barber shop window. Clearly he was guilty of contributory negligence which bars his recovery.

The judgment of the lower court will be reversed and a final judgment entered for the defendant.

*Reversed and final judgment.*