# Richmond.

## VIRGINIA ELECTRIC AND POWER COMPANY v. PHILIP EVICH'S ADMRS.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*T. Justin Moore, W. H. Venable, L. S. Parsons* and *Norman L. Flippen,* for the plaintiff in error.

*Barron & Darden,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The defendant company operates bus lines in the city of Norfolk for the transportation of passengers. Philip Evich, the plaintiff, was struck and injured under these circumstances: He was walking southwardly along the east side of Boush street and was crossing Plume street from the northeast corner to the southeast corner of Plume and Boush streets. A bus being operated by the defendant, having come south on Boush street, was making a long left-hand turn into Plume street. At the time the plaintiff was struck, he was about five or six feet from the south curb of Plume street, having walked nearly across that street at its intersection with Boush.

There was a verdict for the plaintiff of which the defendant company is here complaining upon these grounds: First, that there was no evidence of actual negligence on its part; and, second, that the record discloses that the plaintiff was clearly guilty of such negligence on his part as would bar any recovery, although it were conceded that the defendant was guilty of primary negligence.

The plaintiff relies upon his own testimony and that of a passenger upon the bus. He was seventy-seven years old, and testified that of course he was walking slowly; that when he looked around he didn't see anything in his way and started across the street; that

when he got within six feet of the curb stone, on the south side of Plume street, he heard a scream from a lady and when he looked the bus was right on top of him; that the bus knocked him six or eight feet; that he heard no gong sounded and had no notice of the approaching bus until the lady screamed, and that then his injury occurred almost immediately. He testified that he looked and saw nothing to prevent his attempt to cross the street; that he did not stop but walked straight across; that the middle of the bumper struck him; that he tried to catch it, but lost his grip and it knocked him six or eight feet. This being his position, of course the bus was approaching him from behind while it was on Boush street, and on his right side as it turned into Plume street.

This is the substance of the testimony of his other witness, the passenger, Mrs. Sherry: "I was sitting right behind the driver on the left-hand side of the bus directly behind the driver, and as we turned from Boush street I saw the old gentleman and I thought the driver saw him. I was looking to the left, and was watching him, and I thought, of course, the driver saw him. I realized, as we got almost to the old gentleman, the driver was not looking at him, and I screamed. There was a police officer sitting on the right-hand side, and he also attracted the driver's attention. I don't think the driver saw the man until we screamed, for at that time he put his brakes on, but he hit the old gentleman. * * * I saw him as we turned from Boush. There is quite a sweep, and he stepped off the curb and was crossing slowly, directly across the street." Again, she said in reply to the question: "Now what time did you look at the driver of the car— could you say which way you were looking before the accident happened, tell the jury in your own lan-

guage?" "I was looking out of the left window watching the old gentleman, and I thought the driver was watching him and everything would be all right. About that time he had gotten almost with the bus up to the old gentleman, and I realized the driver was not looking, and I looked ahead, and I saw he was not putting his brakes on, and when I saw he was not looking, he was looking to the right, and I screamed, and so did the officer, and both attracted his attention, and about that time he hit him."

Again:

"Can you tell the jury whether or not you recall whether or not the bus sounded its gong or gave any signal?

"I think not, but I am not positive. I would not swear, but I am almost positive he did not sound the horn."

She also testified that her impression was that the plaintiff did not see the bus and that he did not stop from the time he left the curb until he was hit; that he was steadily walking until the bus struck him, apparently looking directly ahead.

The defendant company introduced two other passengers, one of whom was a policeman, and the driver of the bus. This is a summary of their evidence:

The passenger, Mrs. Murdock, was sitting on the left-hand side and saw the plaintiff as the bus was turning into Plume street, at which time she said the bus driver blew his horn and plaintiff stopped in the street. At this time there was a boy approaching on Boush street from Main, on the right of the bus, riding a bicycle rather fast. She thought the plaintiff was going to stand where he was and her attention was attracted to the bicycle until a lady screamed, and then the bus was practically on the plaintiff, and the

bicycle veered to the right and avoided collision with the bus." She did not see the plaintiff any more after he stopped in the street until the lady screamed, and the bus was rounding the turn from Boush into Plume street at a very low rate of speed.

The police officer corroborated the statements of this witness, substantially, but located the boy about half way down the block at the time his attention was attracted to him. The driver of the bus describes the accident thus: "Just as I was turning to the left from Boush to Plume, the old gentleman was crossing the street. I blew my horn and he stopped, and, in the meantime, I was half way around the dummy. The front of the bus had entered into Plume street, and after I blew my horn and the old gentleman stopped, my attention was attracted by a little boy coming down on a bicycle, and I was passing around the curve, and I looked again, and the old man was right in front of the bus, and the bus knocked him down." He further testified repeatedly that the bus came to a stop almost immediately after its contact with the plaintiff and moved only about three inches. No other vehicles or persons were in the street in the vicinity to distract attention at the time of the occurrence.

It seems to us perfectly clear that there was evidence of actual negligence on the part of the defendant; indeed, the testimony of the plaintiff's witness, Mrs. Sherry, the substance of which has been recited, makes a clear case of actionable negligence against the company—that is, that the plaintiff was injured while he was slowly walking across the street directly in the pathway of the approaching bus, but apparently oblivious of his danger, and that there was ample time, if the driver had been looking ahead and giving him proper attention, to have stopped the vehicle and

avoided the injury. If this evidence was credible, then the apparent negligence of the plaintiff in failing to take ordinary care for his own safety would not bar his action, and this upon the familiar doctrine of discovered peril, or last clear chance. There is no need to elaborate this statement.

The errors assigned are, first, that the court refused to set aside the verdict as contrary to the law and the evidence, and either grant a new trial or render final judgment for the defendant.

It follows from what we have said that the court committed no error in this respect, and that the evidence submitted on behalf of the plaintiff is sufficient to sustain the verdict. Of course, it is equally true that the evidence introduced for the defendant company is amply sufficient to sustain a verdict for the defendant. If there had been a verdict for the defendant, it should not have been disturbed by the trial court, and would not have been disturbed here. Under our system, it is a clear case for submission to the jury and their verdict will be respected.

The other error assigned is the refusal of the court to grant defendant's instruction "C" as offered, and in amending it as shown.

Instruction "C" as offered reads: "The court instructs the jury that if you find from the evidence that the plaintiff stepped from the curb stone while the bus was entering the intersection of Plume and Boush streets, with the moving bus in his line of vision, and stopped as if to let the bus pass, and it so appeared to the driver of the bus, then the driver of the bus had a right to assume that the plaintiff would not attempt to cross the street in front of the moving bus, and his failure to see the man in time to prevent the accident

was not negligence, if it was caused by his attention being momentarily directed to traffic to his right.''

This instruction was modified by omitting the concluding words, ''and his failure to see the man in time to prevent the accident was not negligence if it was caused by his attention being momentarily directed to his right.''

The instruction as modified reads: ''The court instructs the jury that if you find from the evidence that the plaintiff stepped from the curb stone while the bus was entering the intersection of Plume and Boush streets, with the moving bus in his line of vision, and stopped as if to let the bus pass, and it so appeared to the driver of the bus, then the driver of the bus had a right to assume that the plaintiff would not attempt to cross the street dangerously near to or immediately in front of the moving bus.''

One objection to the instruction as offered is that it comes so close to an invasion of the province of the jury under the peculiar facts of this case. Of course, as we have indicated, the defendant had the right to argue to the jury, under this testimony, that there was no last clear chance because of the divided attention of the driver of the bus, but it cannot be said that as a matter of law his failure to see the plaintiff slowly crossing the street, apparently oblivious of his peril, was not negligence. It cannot be said, as a matter of law, that the possible peril of the boy relieved the driver of his obvious duty arising out of the actual peril of the plaintiff. It is one of those questions about which reasonable men may fairly differ. The passenger seated immediately behind the driver saw and realized the imminent peril of the plaintiff, and a momentary glance by the driver in that direction—$i.\ e.$, the direction in which the bus was moving—would have dis-

closed it to him. The trial court apparently gave every other instruction for which the defendant asked, and these in their entirety fairly presented the defense to the jury. It is said in the brief for the company that no instruction was asked or given as to the last clear chance in the trial court. This we regard as an inadvertence on the part of the plaintiff's attorney, but of this the defendant company cannot complain. The testimony relied on by the plaintiff presented that issue to the jury, and whether they were properly instructed with reference thereto or not is entirely immaterial here and now.

Our conclusion is to affirm the judgment.

*Affirmed.*