Charles W. FARRELL, Appellant,

v.

Robert B. WEINARD, Appellee.

No. 7325.

United States Court of Appeals Fourth Circuit.

Argued Jan. 10, 1957.

Decided Feb. 18, 1957.

A. Arthur Rosenblum and I. H. Jacobson, Charleston, S. C. (Joseph Fromberg, Charleston, S. C., on brief) for appellant.

B. Allston Moore, Charleston, S. C. (Moore & Mouzon and Harold A. Mouzon, Charleston, S. C., on brief), for appellee.

Before SOPER and SOBELOFF, Circuit Judges, and WARLICK, District Judge.

WARLICK, District Judge.

This is an appeal by plaintiff from a dismissal of his action, under Rule 50, Fed.Rules Civ.Proc. 28 U.S.C.A., at the close of all the evidence offered in the trial below, and brings up for review the negligence claimed to warrant a recovery. Plaintiff and his companion, Cochran, were enlisted men stationed at the Charleston Air Force Base, and around 6:30 in the evening of March 3, 1955, left the Base on leave, spending the next several hours or more drinking beer at various taverns along South Carolina Highway 52, which links the Air Base with the City of Charleston. When plaintiff and his companion started back to the Base, both were highly intoxicated.

Highway 52 is a modern four-lane road with two North bound and two South bound lanes of travel, each being twenty feet wide and separated by a grass strip of approximately the same width. Plaintiff and his companion were walking in a northerly direction along the east side of the North bound road and at the point where the accident took place, for some unexplained reason, started to cross the highway. This spot was considerably south of the road that intersects and leads off from the highway to the Air Base and was some little distance from the nearest of the lights which had been placed at intervals along either side of the highway for the purpose of lighting. At the point where plaintiff and his companion attempted to cross there were no buildings on either side of the roadway; no walkway or crossing of any kind had been laid out, and there would appear no reason for one to cross the highway at this point.

Cochran who obviously was not as drunk as plaintiff, testified that he looked south on the road, saw the light of an approaching car, but thinking that there was plenty of time to cross in safety, started to cross the road. He was walking ahead of Farrell. Just as he stepped on the grass strip he heard a screeching of the tires and a thud, and turning, saw that Farrell had been struck by an automobile in the left lane of the North bound road. He testified that in his opinion, based on "the squealing of the tires, and everything," that the car was going 55–60 miles an hour. Farrell in his testimony stated that he did not recall much about the circumstances connected with his injury, and that on getting away from the Base he and Cochran visited at least four different beer taverns and that he possibly drank a dozen beers, and that around 10:00 o'clock, when they left Sharon's Grill, the last of the beer taverns visited, he did not recall anything further until "I woke up in the Naval Hospital." "That is the next thing I remember after that."

The defendant holds a Captain's commission in the Air Force and is a jet-plane pilot. In company with five fellow officers he had gone to Charleston for supper, and was returning to the Air Base. The occurrence took place between 9:30 and 10:00 o'clock. He

and the other pilots were to fly the next morning and none had anything to drink. The car was being operated by the defendant at about 40 miles an hour. This highway was zoned at 45 miles.

As defendant was approaching the intersection of the highway and the Air Port road, he drove over from the right side on to the left side of the North bound lane, and observed that a car just in front of him had made a sharp swerve to the right and back again, and sensing that some obstruction was in the road, took his foot from the gas pedal. Almost instantly he saw an individual, who later turned out to be Farrell, standing in the center of the North bound road, facing the east, and evidently about to step into that direction. At approximately the same time the defendant saw Cochran then standing on the edge of the grass strip in the middle of the two highways, also facing east. In that situation defendant then swerved his car to his left, to give plaintiff plenty of room; that the speed of the car was slowed appreciably, when suddenly and for no apparent reason, Farrell turned and ran diagonally to the southwest, squarely into the path of the defendant's car. Defendant applied his brakes, cut more nearly to the left, but evidently plaintiff was still coming on, and was struck near the edge of the pavement and thrown onto the grass strip. The car traveled about thirty feet after the collision. Defendant's speed was approximately 15–20 miles an hour at the time plaintiff was struck.

At the time when defendant first saw him, plaintiff was in the middle of the highway and was evidently trying to light a cigarette. Plaintiff's leg was fractured and he received some other injuries, though of a superficial nature.

The testimony of certain disinterested witnesses is to the effect that there were at least three other automobiles on this highway traveling northwardly at the time of the occurrence and all in front of the defendant's automobile, and that the driver of each car was compelled to turn abruptly on the roadway to avoid striking plaintiff as he stood in the middle of the road apparently in full possession of his faculties.

At the conclusion of all of the evidence the District Judge granted a motion for a directed verdict in favor of the defendant—holding that in no aspect of the case was the evidence sufficient to take the cause to the jury.

■ The appellee recognizes that in directing a verdict the court is obligated to accept the evidence in its light most favorable to the party against whom the directed verdict is asked, and that any conflict in the evidence in the case must be resolved in his favor, and that all inferences that can be legitimately drawn must be taken in his behalf. Garrison v. U. S., 4 Cir., 62 F.2d 41; Burcham v. J. P. Stevens & Co., 4 Cir., 209 F.2d 35; Snead v. New York Central Railroad Co., 4 Cir., 216 F.2d 169.

Counsel for appellant in their brief filed in this court laid great stress in their contention that "the issue of negligence should have been submitted to the jury under the doctrine of the last clear chance" and claim error in the court's ruling in not submitting the issues in line with their contention for determination. Seemingly prior to 1951 the doctrine of the last clear chance did not apply in South Carolina. Blackwell v. First National Bank, 185 S.C. 427, 194 S.E. 339; Seay v. Southern Railway-Carolina Division, 205 S.C. 162, 31 S.E. 2d 133. The same results were reached under the decisions of the courts of South Carolina by the application of the general rules of negligence. In Jones v. Atlantic and Charlotte Air Line Railway Co., 218 S.C. 537, 63 S.E.2d 476, 26 A.L.R.2d 297, the court definitely held that the doctrine of the last clear chance was applicable in South Carolina and thereupon adopted the well nigh universal doctrine as set forth in said rule, saying in part:

"Under the doctrine of the last clear chance, which prevails in this

State, even though the deceased negligently exposed himself to a risk of danger while intoxicated or became intoxicated after a negligent exposure to danger, if he was on the track in a helpless condition and those in charge of the train discovered, or in the exercise of ordinary care should have discovered, him in such perilous situation in time to avoid injuring him by the exercise of ordinary care, the railroad company would be liable." Young v. Charleston & Western Carolina Railway Company, S.C., 1956, 93 S.E.2d 866, 869.

 This doctrine of the last clear chance is very often spoken of as the doctrine of discovered peril. It is this:

"The contributory negligence of the plaintiff does not preclude a recovery where it is made to appear that the defendant, by exercising reasonable care and prudence, might have avoided the injurious consequences to the plaintiff, notwithstanding plaintiff's negligence; that is, that by the exercise of reasonable care defendant might have discovered the perilous position of the party injured or killed and have avoided the injury, but failed to do so. Haynes v. Southern R. Co., 182 N.C. 679, 110 S.E. 56, and cases cited; Redmon v. Southern R. Co., 195 N.C. 764, 143 S.E. 829; Caudle v. Seaboard Air Line R. Co., 202 N.C. 404, 163 S.E. 122; * * * Taylor v. Rierson, 210 N.C. 185, 185 S.E. 627.

"The practical import of the doctrine is that a negligent defendant is held liable to a negligent plaintiff if the defendant, being aware of plaintiff's peril, or in the exercise of due care should have been aware of it in time to avoid injury, had in fact a later opportunity than the plaintiff to avoid the accident. 38 Am.Jur. 901.

"Peril and the discovery of such peril in time to avoid injury constitutes the backlog of the doctrine. * * * Hunter v. Bruton, 216 N.C. 540, 5 S.E.2d 719. It presupposes negligence on the part of defendant and contributory negligence on the part of the party injured or killed which, in the absence of the doctrine, would preclude recovery in spite of defendant's negligence. * * * Mercer v. Powell 218 N.C. 642, 12 S.E.2d 227." Ingram v. Smoky Mountain Stages, 225 N.C. 444, 447, 35 S.E.2d 337, 339.

It is obvious, however, that this doctrine has no application to the facts of this case, for the evidence does not justify the inference that the defendant saw or should have seen the plaintiff in a position of danger in time to avoid the accident. Plaintiff's situation came about wholly from his voluntary act in placing himself in a position of danger, and since there is no proof of negligence on the part of the defendant, there can be no recovery and the judgment must be affirmed.

Affirmed.