**Alma Irene NICHOLSON, Committee of Herman Ray Nicholson, Appellant,**

v.

**Fred STROUP, Appellee.**

**No. 7482.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 21, 1957.

Decided Nov. 7, 1957.

George E. Allen, Richmond, Va. (Allen, Allen, Allen & Allen, Richmond, Va., on brief), for appellant.

M. Wallace Moncure, Jr., Richmond, Va. (Moncure & Cabell, Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

SOBELOFF, Circuit Judge.

A pedestrian, Herman Ray Nicholson, who was injured by an automobile owned and driven by Fred Stroup, brought an action for negligence in the United States District Court for the Eastern District of Virginia. At the conclusion of the plaintiff's case, the court directed a verdict for the defendant and entered judgment in his favor. The plaintiff appeals, contending that the evidence adduced by him was legally sufficient to warrant recovery and that the court should have submitted to the jury the issues of primary negligence, contributory negligence, and last clear chance.

Driving north on United States Highway No. 1 between Richmond and Petersburg, Virginia, at eleven o'clock on the night of the accident, Nicholson stopped and parked his automobile on the east side of the road directly across from his destination, the House Trailer Sales. The road itself had no lights at this point, but lighted store windows lined

both sides. There was no crosswalk near where Nicholson crossed the highway, and while he was in the last of the four lanes, one step from the west edge of the road, he was struck by Stroup's automobile going in a southerly direction.

Called by the plaintiff as an adverse witness, the defendant testified that he had been driving at an approximate speed of forty miles per hour when he passed two automobiles also heading south. Stroup said that while still glancing back to see if he could resume driving in the right lane without colliding with the overtaken vehicles, he began to move into that lane. He claimed that he was not aware of the plaintiff's presence until after he struck him at a point between seventy-five and two hundred feet from the overtaken automobiles, when he was partly in the passing lane and partly in the driving lane. He admitted that his headlights were dimmed, and illuminated only seventy-five feet of the path ahead.

Mrs. Joyce Hall, who lived opposite the point of impact, heard Nicholson's car stop in front of her home. She testified that she came to her window and watched him cross the road, walking at a moderate gait when he was hit. She denied that there were other southbound vehicles at the time of the accident. The defendant sought to weaken her testimony by eliciting the fact that her house was set back from the highway, indicating a limited view. The precise field of vision on the road does not appear in the testimony, but pictures were offered in evidence from which a jury might form an opinion.

Nicholson's version was that when he looked both ways before proceeding, he did not see the defendant's automobile. In explanation, he added that the lights in the store buildings were confusing. When he reached the center of the fourth or westernmost lane (two steps from safety), he saw for the first time Stroup's automobile which, he asserted, was already traveling in that lane. Nicholson noticed that the defendant was driving with dim lights, and acknowledged that

he misjudged both the distance between himself and the defendant's automobile (thinking that it was two hundred feet away), and also the speed at which it was going. He turned away, took one step without hastening his pace, and was struck. He could not say whether there were other vehicles behind the defendant.

The problem here presented has a double aspect. One raises a question of the substantive law of negligence and contributory negligence, as to which we must apply Virginia law. The other is procedural in nature and relates to the respective roles of judge and jury in a federal court, where the firmly established rule is that if the evidence is conflicting, and may support either the plaintiff's or the defendant's theory (under the substantive law of the State), the Seventh Amendment requires a decision by the jury. Burcham v. J. P. Stevens Co., 4 Cir., 1954, 209 F.2d 35. With this conflict in the evidence, our inquiry is whether, under the substantive law of Virginia, the evidence, together with the reasonable inferences therefrom, was sufficient to support a verdict for the plaintiff, since, on review of a motion for directed verdict, we are obliged to draw all reasonable inferences favorable to the appellant. 2 Barron and Holtzoff (1950), Sec. 1075, p. 759; Farrell v. Weinard, 4 Cir., 1957, 241 F.2d 562.

We do not think the evidence adduced by the plaintiff clearly and unequivocally negates the defendant's liability. For reasons discussed below, reasonable minds may differ as to the existence of primary negligence, contributory negligence, and last clear chance, and so the case was not an appropriate one for final disposition by direction of the Court.

Upon several hypotheses, the jury could have found for the plaintiff:

1. *Primary negligence:* Believing Mrs. Hall, the jury could have found (a) an absence of the other vehicles which the defendant claimed diverted his attention from the road ahead; (b) that the defendant was negligent in

failing to keep a proper lookout (not only to see the pedestrian but to take reasonable action toward him once observed), and (c) that the defendant negligently failed to use headlamps of sufficient illumination. Singly or in combination, these factors could have been considered by the jury to constitute negligence. Penoso v. D. Pender Grocery, 1941, 177 Va. 245, 13 S.E.2d 310; Va.Code (1950), Sec. 46–276 (requiring single beam headlamps to "be of sufficient intensity to reveal persons and objects at a distance of at least two hundred feet"); Sec. 46–277 (requiring multiple beam headlamps to have "an uppermost distribution of light * * * of sufficient intensity to reveal persons and objects at least three hundred and fifty feet ahead * * *."); Davis v. Scarborough, Va.1957, 97 S.E. 2d 731.

Accepting Stroup's own story, the jury might have found primary negligence in his failure to turn on his bright lights after passing the other automobiles, and in swinging into a new path without looking ahead. True, the Virginia statute requires a driver to dim his lights when he approaches the rear of another vehicle within two hundred feet of him (Va.Code (1950), Sec. 46–279), but Stroup himself admitted that he had already passed the other vehicles, and the jury could have decided that his failure to brighten his lights sooner than he did was a negligent omission. The precaution he took to avoid collision with cars behind him would not exempt him from the duty to look where he was going. See: Va.Code (1950), Sec. 46–233 (requiring that "Every driver who intends to start, stop, turn or partly turn from a direct line shall first see that such movement can be made in safety * * *."). The presence of a pedestrian was not such a remote possibility that the driver could ignore it without breaching the requirements of ordinary prudence. At any rate, the defendant's attempted self-exculpation on the ground that he was looking back, raised at most a jury question as to the prudence or imprudence of his conduct. Cf. Virginia Electric &

Power Co. v. Evich, 1929, 152 Va. 236, 146 S.E. 265.

2. *Contributory negligence:* Nicholson's conduct was not so plainly and decisively negligent as to justify its being so characterized as a matter of law. As Mr. Justice Holmes remarked, "A choice may be mistaken and yet prudent." Kane v. Worcester Consolidated St. Ry., 1902, 182 Mass. 201, 65 N.E. 54. And we are reminded by Judge Magruder that " * * * the 'reasonable man,' that standardized man to whose assumed conduct in like circumstances the plaintiff's conduct must conform, is not altogether devoid of human frailties." P. S. C. of New Hampshire v. Elliott, 1 Cir., 1941, 123 F.2d 2, 7. The Supreme Court of Appeals has declared that whether this type of misjudgment constitutes negligence is a proper question for the jury:

"Whether the plaintiff, after glancing up the street and seeing the defendant's car, was justified in continuing her journey without the further exercise of her senses, was using such care as an ordinarily prudent person would use under the same circumstances, was a question of fact for the jury. * * * It is not the duty of pedestrians to make mathematical calculations before crossing streets in front of automobiles, but to exercise ordinary care for their safety." Green v. Ruffin, 1924, 141 Va. 628, 125 S.E. 742, 745.

The rule thus enunciated was applied to a fact situation almost identical with this case. The Court cited with approval Knapp v. Barrett, 216 N.Y. 226, 110 N. E. 428, 429, in which Judge (later Justice) Cardozo made his classic formulation of the relative duties of pedestrians and operators of vehicles:

"A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger * * *. The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is

878

not bound as a matter of law to look again. The law does not even say that, because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault."

█ There is no inconsistency between our view here and our holding in Farrell v. Weinard, 4 Cir., 1957, 241 F.2d 562, 564. The facts distinguish the two cases. There, the uncontradicted evidence was that the plaintiff, standing on a grass plot in the center of a dual lane highway, a place of safety, "suddenly and for no apparent reason * * * turned and ran * * * squarely into the path of the defendant's car." Such conduct, we held, warranted the trial court's ruling that the plaintiff was guilty of contributory negligence as a matter of law. Here, however, the defendant's own testimony establishes that the pedestrian's course, otherwise safe, was transformed into a path of danger by the defendant's sudden turn. The pedestrian's account of the accident would convict him, at most, of misjudgment resulting in failure to remove himself from the path of danger, not of rushing suddenly and blindly into it. See, also, Mouser v. Griffith, 1957, 198 Va. 709, 96 S.E.2d 98; Burke v. Scott, 1951, 192 Va. 16, 63 S.E.2d 740; Danner v. Cunningham, 1952, 194 Va. 142, 72 S.E. 2d 354.

█ 3. *Proximate cause and last clear chance:* Finally, even if a jury should deem the plaintiff's conduct negligent, it might still reasonably decide that this was not a proximate cause of his injury, but that Stroup's sudden invasion of the lane where Nicholson was, constituted the sole proximate cause. See Adkins v. Young Men's Christian Ass'n, 1928, 149 Va. 193, 141 S.E. 117, where it was held that even if the pedestrian crossing the street was guilty of negligence, the swerving of the defendant's automobile into the left lane could have been the sole proximate cause of the injury, and the jury's verdict for the plaintiff should not have been set aside.

█ Closely related to the question of proximate cause is the doctrine of last clear chance. Some authorities, including the highest court of Virginia, treat these as complementary expressions of the same principle. In the circumstances of this case, if " * * * the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, his peril in time to avert the accident by using reasonable care." Greear v. Noland Company, 1955, 197 Va. 233, 89 S.E.2d 49, 53. But the defendant may not make an impregnable shelter of his bare assertion that he did not look ahead. It was testimony the jury could credit or reject. The plaintiff may not be deprived automatically of the benefit of the last clear chance doctrine simply because the defendant testified that he was not looking. If, in light of the physical facts, and from the jury's impression of the defendant's credibility, it determined otherwise, it might have found that he did in fact see the plaintiff, but negligently failed to use reasonable care to prevent injuring him. Here, the jury was free to combine Mrs. Hall's statement that no other southbound vehicles were on the road, with Nicholson's testimony that the defendant's automobile was in the right lane for at least two hundred feet; and so the jury could have arrived at the conclusion that Stroup was in fact looking in the plaintiff's direction, did see him, and had the last clear chance. The plaintiff was entitled to a proper instruction as to this.

The judgment must be set aside and a new trial awarded.

Reversed and remanded.