**Commander W. C. GRAFTON, Appellant,**

v.

**Carl WHITE, Appellee.**

**No. 7775.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 20, 1959.

Decided Jan. 23, 1959.

Preston P. Taylor, Norfolk, Va. (Taylor, Gustin & Harris, Norfolk, Va., on the brief), for appellant.

Herbert K. Bangel, Portsmouth, Va. (Sidney H. Kelsey, L. David Lindauer, Norfolk, Va., and Bangel, Bangel & Bangel, Portsmouth, Va., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and PAUL and BOREMAN, District Judges.

PER CURIAM.

This appeal arises from the denial, by the District Court, of a motion for a directed jury verdict for the defendant (appellant) at the conclusion of the plaintiff's (appellee's) evidence, the denial of a like motion at the conclusion of all the evidence, and the denial of a motion to set aside the jury verdict in favor of the plaintiff and enter judgment for the defendant. All motions were premised upon the contention that the plaintiff, White, was guilty of contributory negligence as a matter of law.

Viewing the evidence in the light most favorable to the plaintiff, as here required, a brief statement of facts follows. Shortly after six o'clock in the morning of January 17, 1958 (dark but clear and without fog), the plaintiff had parked his car in a parking lot on the southerly side of a Naval Air Station taxiway at Norfolk, Virginia, and intended to cross the taxiway on a pedestrian cross-walk 6½ feet wide, designated by two 8-inch white strips on each side with intersecting 6-inch strips running ladderwise every 2½ feet. The cross-walk intersects the taxiway at a slight angle and is 52 feet long, extending from the southerly side of the taxiway in a northeasterly direction. The taxiway, used for motor vehicle traffic, is 48 feet wide and runs generally east and west. It is a four-lane concrete roadway, each lane 12 feet in width, two lanes for eastbound traffic and two lanes for westbound traffic. The eastbound and westbound traffic lanes are divided by a solid white line, and a broken white line separates the two lanes which proceed in the same direction.

Upon reaching the southerly side of the taxiway, at the pedestrian cross-walk, plaintiff looked to his left and right, saw no vehicles approaching, and proceeded to walk across the taxiway in that area designated for pedestrians. Upon reaching the center of the taxiway, he again looked to his right and saw the automobile approximately 215 feet distant, then driven by the defendant, Grafton, heading west. At that time, defendant's automobile was straddling the center white line and, believing he had ample time to complete his crossing, plaintiff continued toward the north side of the roadway. He crossed the southernmost westbound lane and reached a point approximately two steps into the northernmost westbound, or outside, lane when he looked again to his right, saw that defendant's automobile had left the center of the roadway and, instead of passing behind him, was traveling toward the lane where plaintiff was cross-

ing. Collision being imminent, plaintiff "froze" and was struck by the right front of the defendant's automobile and over-run by the right wheels.

Before reaching the taxiway, the defendant had been driving in traffic with his lights dimmed, and he admitted that when he entered the taxiway he neglected to turn on the bright headlights. There were no other motor vehicles in the immediate area of the accident. Defendant was driving, according to his testimony, at approximately thirty miles per hour and did not see plaintiff before the collision or, at least, not in time to avoid the accident. He was not unfamiliar with the area. Counsel for the defendant admitted, in argument, that there was evidence from which the jury could have found the defendant guilty of negligence.

Section 46.1–231 of the Code of Virginia, 1950 (enacted in 1926), provides:

"(a). The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk * * *.

"(b). No pedestrian shall enter or cross an intersection in disregard of approaching traffic.

"(c). The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to cross such intersection safely and expeditiously."

Plaintiff testified that the place of accident was a "business area for the Government". Obviously the case was tried on the theory that the area of the accident was a "business district" within the meaning of subsection (a) of the quoted statute. The Judge correctly charged the jury as to the law of negligence not only as pertaining to the defendant, but also as to contributory negligence on the part of the plaintiff. He referred to the use, by plaintiff, of the pedestrian crosswalk and the duty of the plaintiff to exercise reasonable care for his own safety even though he had the right-of-way over vehicular traffic. The issues of primary negligence on the part of the defendant and contributory negligence on the part of the plaintiff were fully and fairly explained to the jury, and the jury, by its verdict, found that the plaintiff was not guilty of contributory negligence.

Defendant apparently urges here: That plaintiff, having once seen defendant's automobile approaching and following the center white line, must keep said automobile in constant and uninterrupted view; that although the roadway was free of all vehicular traffic other than the defendant's car, plaintiff should have anticipated that defendant would leave the center and swing over into the outer westbound area rather than pass behind the plaintiff, as the defendant could easily have done; that, in effect, plaintiff was an insurer of his own safety and he used the cross walk at his peril.

We do not believe that the decision law of the Commonwealth of Virginia may be construed as sustaining defendant's position. For authority we need cite only the case of Nicholson v. Stroup, 4 Cir., 1957, 249 F.2d 874, for an analysis of the Virginia decisions and the law generally applicable here. Upon the facts in the case at hand, we re-affirm the holding in Nicholson, supra, quoted from page 876 as follows:

"* * * reasonable minds may differ as to the existence of primary negligence, contributory negligence, and last clear chance, and so the case was not an appropriate one for final disposition by direction of the Court."

Since we cannot hold that the plaintiff was guilty of contributory negligence as a matter of law, the action of the District Court will be

Affirmed.