# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## ELBERT W. WEST v. CITY OF PORTSMOUTH

March 4, 1977.

Record No. 760033.

Present, All the Justices.

*Lester E. Schlitz; Vann H. Lefcoe (Schlitz, Levy and Livesay, Ltd.,* on brief), for plaintiff in error.

*Gordon B. Tayloe, Jr., City Attorney (Steven Leiberman, Assistant City Attorney,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Elbert W. West sought to recover a judgment against the City of Portsmouth for personal injuries allegedly sustained as a result of the negligent installation and maintenance by the city of a water meter box in a sidewalk on County Street in front of Caffee's Bakery. At the conclusion of the evidence the trial court sustained a motion by the city to strike appellant's evidence and entered summary judgment for the city. The issue on appeal is whether West was guilty of contributory negligence as a matter of law.

Elbert W. West, age 69, had previously suffered a stroke and walked with the aid of a cane. On April 21, 1975, about 2 p.m. he,

together with Robert West, his twin brother, was walking along a sidewalk on County Street in Portsmouth. The brothers had been living in the area for about 20 years and had been in the habit of using this sidewalk four or five times a week. On the day in question they had been downtown for lunch and were en route home. Robert testified that he noted "some people come out of Caffee's Bakery Shop" and that he tried to move "to the right side a little bit"; that he was walking slowly; and that when he turned around and looked his brother had fallen. Appellant, Elbert W. West, testified: "When we got by Caffee's Bakery, some people came out the door. And when they did, they diverted my attention to them, and I watched them to keep from running into them. And I walked over a little, and when I did, I made that step in that hole, and my foot twisted, and I fell frontwards."

The evidence established that the sidewalk in front of the bakery at the point where the accident occurred is approximately 11 feet 9 inches wide. The area occupied by the water meter box was described as 3 feet by $2^1/2$ feet with the deepest part of the depression being $2^1/4$ inches.

Appellant testified there were "about two or three people coming out of the bakery door" at the time he stepped into the depression and fell. He said that he was familiar with the sidewalk and was looking where he was going. He also testified that he had never noticed any depression or defect in the sidewalk.

Elizabeth Edwards, cashier of Caffee's Bakery, testified that she had never observed any depression at the water meter. She said that appellant had passed in front of the bakery from four to five times a week during the year she had been employed there. Although the parties admit the sidewalk was in bad condition, and the photographs so reflect, the city had no record of anybody complaining about its condition or a record of any repairs having been made.

We recently enunciated the general principles which control our decision here in *City of Newport News* v. *Anderson*, 216 Va. 791, 223 S.E.2d 869 (1976). There the plaintiff was injured when she caught the heel of her shoe in a hole or depression in the sidewalk. The depression measured 4 inches in diameter and was $^1/2$ inch deep at its deepest point. Plaintiff testified that she had

walked on the sidewalk on numerous occasions prior to her fall and had never observed the hole or depression in which she caught her heel. After viewing the evidence in the light most favorable to the plaintiff, we found that it disclosed nothing more than a defect so slight that it would not endanger travel in the ordinary modes by a person exercising reasonable care for his own safety. In denying a recovery, we held:

"A municipality is charged with the duty of maintaining its sidewalks in a safe condition, free from defects and obstructions dangerous to pedestrians exercising ordinary care. [Citations omitted.] A municipality is not, however, an insurer against all accidents which may occur on its sidewalks. [Citations omitted.] A municipality need only maintain its sidewalks in a reasonably safe condition for travel in the ordinary modes. It is not expected, nor is it required, to keep the surface of its sidewalks perfectly level and even. [Citation omitted.]

"Not every defect in a sidewalk, even though it may have caused the injury sued for, is actionable. [Citations omitted.] When the defect is so slight that reasonable men could not differ in concluding that it would not endanger travel in the ordinary modes by persons exercising ordinary care, the municipality is free of negligence as a matter of law and a trial court may not sustain a verdict holding the municipality liable. [Citations omitted.]" 216 Va. at 792-93, 223 S.E.2d at 870.

In *Hillsville* v. *Nester*, 215 Va. 4, 205 S.E.2d 398 (1974), the plaintiff fell as the result of stumbling over a 2$^1$/$_2$ inch depression in a sidewalk on which she was walking. The depression was caused by one slab of the sidewalk settling below the connecting slab. Although the depression had existed for several years and plaintiff had walked over it on the way to work that morning and numerous times previously, she testified that she had never noticed it. It further appeared that ahead of her at a distance of two or three feet was a group of eight or ten of her fellow employees, and another group followed her. We concluded that the plaintiff was guilty of contributory negligence as a matter of law and said:

"A pedestrian injured on account of a sidewalk defect is guilty of contributory negligence as a matter of law when he

had actual knowledge of the defect and no reasonable excuse for inattention. [Citations omitted.]

"The same is true when, although the pedestrian had no actual knowledge, the defect was open and obvious and, by the exercise of ordinary care, could have and should have been seen. [Citations omitted.]

"To accept plaintiff's testimony that she 'had never noticed' the defect prior to the accident, we must necessarily conclude that during the numerous trips she had passed over the defect safely, she was remarkably unobservant. For, as the testimony and photographic exhibits illustrate, the defect was not minor or latent but substantial and readily discernible to the most casual view." 215 Va. at 5, 205 S.E.2d at 399.

Counsel for West seeks to distinguish the instant case from *Hillsville* upon the ground that appellant's attention was distracted by several people who exited the bakery, thereby causing him to move to his right to avoid running into them. West contends that this evidence is sufficient to establish a condition and a distraction "outside of himself" which prevented him from seeing the defect in the sidewalk. He says that thereby a question of fact for the jury was presented as to whether he exercised ordinary care under the circumstances.

The city maintains, and we agree, that more is needed than a simple allegation of a distraction to create a jury issue. It was necessary for plaintiff to establish that his excuse for inattention was reasonable, *i.e.*, that the distraction was unexpected and substantial. To hold otherwise would permit a plaintiff in any case to avoid contributory negligence by showing an insignificant reason for failing to be observant.

The plaintiff in *Staunton* v. *Kerr*, 160 Va. 420, 168 S.E. 326 (1933), was also injured as a result of a depression in the sidewalk around a meter box. The depression was measured to be 2 feet in length, parallel with the curb of the sidewalk, and 7 inches in width. Its average depth was 1 inch and its greatest depth was 1¹/₂ inches. The plaintiff and her witnesses testified that the depth of the depression was from 2 to 4 inches and that the depression was rough and jagged. We found that plaintiff was proceeding along the sidewalk in a listless, unobservant way when the law required her to be reasonably observant. We quoted with approval from *Lerner* v. *Philadelphia*, 221 Pa. 294, 295-96, 70 A. 755, 759 (1908), as follows:

" 'We have gone very far in holding municipalities liable for injuries received in consequence of defective pavements, but never yet so far as to excuse the pedestrian using the pavements from the duty of exercising ordinary care. When one abandons the use of his natural senses for the time being, and chooses to walk over a pavement by faith exclusively, and is injured because of some defect in the pavement, he has only himself to blame. It is, of course, the duty of municipalities to see that the pavements along its streets are reasonably safe for public use; but they are not insurers of the safety of those using them. * * * Irregularities in grade, unevenness in surface, sharp depressions at crossings, accidental displacement of brick or stone, and many other things which may or may not be defects, but yet sufficient in themselves to cause accident to the unwary, are so common and usual that it is the duty of the pedestrian to be observant of such fact, and not to walk blindly. If through no fault of his he is prevented from seeing the defect, obstruction, or whatever it may be, which it was the duty of the municipality to have corrected, and injury results to him, he is entitled to claim compensation. When the accident occurs in broad daylight, in consequence of an open and exposed defect in the sidewalk, the burden rests upon the party complaining to show conditions outside of himself which prevented him seeing the defect, or which would excuse his failure to observe it. . . .' " 160 Va. at 425-26, 168 S.E. at 328.

The city, in its discussion of the theory of distraction as related to contributory negligence, cites not only *Staunton* v. *Kerr, supra,* but also *Osborne* v. *Pulaski L. & W. Co.,* 95 Va. 16, 27 S.E. 812 (1897), where a pedestrian was distracted by flowers in a yard adjacent to a sidewalk; *Schlossberg* v. *Brugh,* 167 Va. 49, 187 S.E. 487 (1936), where a pedestrian fell into an open cellar when his attention was attracted to an incident in a barber shop; and *Eisner* v. *Salt Lake City,* 120 Utah 675, 238 P.2d 416 (1951), where a pedestrian was distracted by an approaching group of children. In each case, the Court found contributory negligence as a matter of law.

In the instant case plaintiff was walking on a sidewalk, admittedly in bad condition, but with which he was thoroughly familiar. The water meter and its cover installed in the sidewalk

were in clear view and its irregularity, unevenness or depression were open and obvious and could have been detected by anyone who was observant. The irregularity in grade and unevenness in surface of water meters installed in sidewalks are so common and usual that it is the duty of a pedestrian to be observant of such facts and not to walk blindly.

There is no evidence in the record that as Mr. West approached the bakery any unusual, unexpected or extraordinary event occurred to distract his attention. If the emergence of two or three people from the door of a bakery which fronted on the sidewalk could be termed a distraction, it was both minimal and insignificant. The mere presence of other persons on a city street entering or emerging from buildings is not normally a sufficient diversion to excuse a pedestrian from negligently stepping into a hole or depression which he knows, or should have known, existed. The people who came from the bakery were not rowdy or belligerent and posed no threat to the safety of Mr. West or his brother. People who use public sidewalks are constantly changing direction, depending upon the number of people they are meeting or passing and other conditions with which they are confronted. On the day Mr. West was injured the sidewalk was apparently free of traffic except for two or three persons who came out of the door of the bakery, which was not an out of the ordinary event.

A careful review of the evidence compels the conclusion that appellant was simply not observant and neglected to see what was and had been open and obvious, and what, by maintaining a lookout commensurate with the circumstances then existing, he should have seen.

The judgment of the lower court will be

*Affirmed.*