# Little Creek Investment Corporation

## v.

## Bertha L. Hubbard, et al.

Record No. 940667

March 3, 1995

Present: All the Justices

*T. Jeffrey Salb (Darlene P. Bradberry; Breeden, MacMillan & Green,* on briefs), for appellant.

*Joseph M. Young (Fay F. Spence; Gaidies, Young & Spence,* on brief), for appellee Global Security Specialists, Inc.

*Edward F. Halloran (Stephen Merrill,* on brief), for appellee Bertha L. Hubbard.

JUSTICE LACY delivered the opinion of the Court.

This is a slip and fall case in which Bertha Hubbard recovered damages from Little Creek Investment Corporation (Little Creek) for injuries she sustained when she tripped over an automobile muffler laying on the sidewalk at a shopping center owned by Little Creek. In this appeal, we consider whether Hubbard was contributorially negligent as a matter of law and whether Little Creek was entitled to indemnity pursuant to a contract with Global Security Specialists, Inc. (Global).

Hubbard worked at the Roses Department Store (Roses) located in the Little Creek East Shopping Center. On January 8, 1991, Hubbard, along with her fellow employees, left the store around 10:00 p.m. following its closing. The weather was dark, rainy, and very windy. Just before the employees left the store, Quinton Jerome Jordan, Global's security guard, saw an automobile muffler next to a garbage can in front of the store. He did not pick it up immediately because the employees "started coming out" and he "assumed that everyone would see it." The employees exited the front door of Roses together and proceeded to their cars in the parking lot. Three or four employees were in front of Hubbard. As she walked along the sidewalk, Hubbard looked straight ahead and did not see the muffler laying in her path. She tripped over the muffler, fell, and fractured her hip.

Hubbard filed a motion for judgment seeking recovery from Little Creek for its negligent failure to maintain its sidewalk in a safe condition for business invitees such as herself. Little Creek filed a third-party action against Global alleging that the failure of Global's employee to remove the muffler constituted a breach of Little Creek's contract with Global and that the breach was the sole proximate cause of Hubbard's accident and resulting inju-

ries.[1] Little Creek sought "full indemnification" from Global for any damages assessed against it as a result of Hubbard's motion for judgment. Following a trial, the jury returned a verdict of $300,000 in favor of Hubbard and, in the third-party action, returned a verdict for Global. Following its consideration of post-trial motions, the trial court entered final judgment on the jury's verdicts. We awarded Little Creek an appeal.

## I. Contributory Negligence

Little Creek asserts that Hubbard was contributorially negligent as a matter of law because, by her own testimony, she did not look down at the sidewalk but instead "looked straight ahead."[2] As a result of her failure to look, she did not see the muffler on the sidewalk before she tripped over it and injured herself. In support of its argument, Little Creek cites cases in which pedestrians were held contributorially negligent as a matter of law because they failed to look and thus did not see the open and obvious defects which caused their accidents. *See Rocky Mount Shopping Center Assocs. v. Steagall*, 235 Va. 636, 369 S.E.2d 193 (1988); *West v. City of Portsmouth*, 217 Va. 734, 232 S.E.2d 763 (1977); *Town of Hillsville v. Nester*, 215 Va. 4, 205 S.E.2d 398 (1974); *Schlossberg v. Brugh*, 167 Va. 49, 187 S.E. 487 (1936); *Staunton v. Kerr*, 160 Va. 420, 168 S.E. 326 (1933); *Portsmouth v. Lee*, 112 Va. 419, 71 S.E. 630 (1911). Little Creek asserts that the principles applied in these cases compel the conclusion that the trial court erred in not holding that Hubbard was contributorially negligent as a matter of law. We disagree.

We have specifically declined to hold that, as a matter of law, a pedestrian's failure to look down while stepping forward must constitute contributory negligence in every case. *City of Suffolk v. Hewitt*, 226 Va. 20, 28, 307 S.E.2d 444, 448 (1983). Rather, the circumstances of each case must be considered to determine whether a pedestrian who failed to look nevertheless produced sufficient evidence to support a finding that the pedestrian exercised reasonable care for his or her safety under the circumstances. If such evidence is produced, a jury question is presented.

---

[1] The contract named Goodman-Segar-Hogan/Little Creek East S/C as the "client." Goodman-Segar-Hogan was the property manager for Little Creek East and Little Creek.

[2] Global also argues before us that Hubbard was contributorially negligent but did not file an appeal or assign error to the trial court's ruling on that issue.

In the cases relied on by Little Creek, there were no unique circumstances surrounding the pedestrians' accidents that created a jury question whether the pedestrians exercised reasonable care for their safety. The pedestrians in both *Steagall* and *Staunton* testified that the defects were clearly visible and that they would have seen them had they looked. No further reason or evidence was offered in either case to account for the failure to keep a reasonable lookout. *Steagall*, 235 Va. at 637-38, 369 S.E.2d at 194; *Staunton*, 160 Va. at 424, 168 S.E. at 328. Likewise, in *Portsmouth*, the only evidence presented was that the pedestrian was hurrying to the theater, looking straight ahead, in lighting that was sufficient to allow her to see and avoid the obstacle that caused her fall had she looked. *Portsmouth*, 112 Va. at 430, 71 S.E. at 634.

In those cases relied on by Little Creek in which the pedestrian asserted an excuse for failing to avoid an open and obvious defect, the pedestrians did not support their proffered excuses with evidence. In *Town of Hillsville*, the injured pedestrian was aware of the defect in the sidewalk over which she tripped, but argued that people walking in front of her blocked her view. The Court held that this *argument* alone did not provide a sufficient basis for finding that her actions were reasonable under the circumstances; she neither testified nor produced any evidence "to show that those ahead of her prevented her from seeing the defect." *Town of Hillsville*, 215 Va. at 5, 205 S.E.2d at 399. Similarly, in *West*, the pedestrian *alleged* that other people entering the street created a diversion. The Court noted that the "mere presence of other persons on a city street entering or emerging from buildings is not normally a sufficient diversion to excuse a pedestrian from negligently stepping into a hole or depression which he knows, or should have known, existed." *West*, 217 Va. at 739, 232 S.E.2d at 766. The pedestrian failed to produce any evidence which indicated that his excuse was reasonable or that he complied in any way with his duty of reasonable care under the circumstances. In finding the pedestrian contributorially negligent, the Court concluded that the oncoming people were neither rowdy nor threatening and that their actions in entering the sidewalk were not an "out of the ordinary event." *Id.*

Finally, Little Creek cites *Schlossberg*, in which a pedestrian was injured when he tripped and fell over an open iron door in the sidewalk. Eyewitnesses testified that the open door was plainly vis-

ible even though it was raining and dark. There was no evidence that other people or events distracted the pedestrian, obscured his vision, or otherwise excused his failure to see the danger ahead of him. The pedestrian was contributorially negligent as a matter of law because the evidence was uncontradicted that the open door was clearly visible and that he never looked forward but instead looked backward over his shoulder as he proceeded. *Schlossberg*, 167 Va. at 57, 187 S.E.2d at 490-91.

None of the cases relied upon by Little Creek involved the production of evidence sufficient to create a jury question whether the pedestrians' actions under the circumstances complied with their duty to exercise reasonable care. There are cases, however, in which such evidence was produced, thereby creating a jury question whether the pedestrian was contributorially negligent.

In *City of Suffolk*, for example, the pedestrian testified that she did not look down as she walked through a doorway. However, the evidence showed that she was moving from an area of bright light to dim light and that the defect, although open and obvious, was obstructed until she opened the door and began entering the building. *City of Suffolk*, 226 Va. at 28, 307 S.E.2d at 449. This evidence was sufficient to raise a jury issue whether the pedestrian complied with her duty of care. *Id.* at 29, 307 S.E.2d at 449. Similarly, in *Miracle Mart, Inc. v. Webb*, the evidence supported the pedestrian's claim that the store clerk's actions and location in the aisle both distracted her attention and blocked her view of the foreign substance on the floor that caused her to slip and injure herself. 205 Va. 449, 452, 137 S.E.2d 887, 890 (1964).

Turning to the instant case, then, we must examine all the evidence presented to determine if it is sufficient to raise a jury issue whether Hubbard complied with her duty of ordinary care in light of her testimony that she did not look down while walking on the sidewalk. In this review, we consider the evidence and all reasonable inferences therefrom in favor of Hubbard, the prevailing party below.

Hubbard's fall occurred a few minutes after 10:00 p.m., following the closing of Roses. It was a dark, rainy, and very windy night. Prior to the accident, Hubbard and her fellow employees were gathered at the front door of the store waiting for the doors to be unlocked by the store manager. Just before they exited, the interior lights were turned off, leaving only the security lights on inside the store. Outside, the sidewalk was lit by a bank of fluores-

cent lights located in an overhanging canopy. The intensity of the lighting at the time of the accident was described as "dim."

The employees exited the front doors together and walked toward their parked vehicles. Some were walking "[a] few steps" in front of Hubbard, some behind, and at least one alongside of her. None of the employees walking in front of Hubbard tripped on the muffler or warned the others of its presence. Although the accident occurred underneath the sidewalk canopy, water was on the sidewalk where Hubbard fell.

A number of witnesses testified that they had seen the muffler earlier in the day located at various positions on or near the sidewalk. However, only Jordan, the security guard, testified that he saw the muffler just prior to the accident. Jordan testified that the muffler "was out there in plain view" on the sidewalk next to a trash can. As the employees exited, Jordan was standing by a railing near the front door of the store. He testified that once Hubbard walked past him, there was nothing else in the area to obstruct her view of the muffler.

 This evidence shows that the circumstances surrounding Hubbard's fall are not comparable to the situation of a pedestrian inattentively walking down a sidewalk, in well-lit or daylight conditions, without distractions, alone, and in clear weather. The evidence produced here could lead reasonable people to disagree whether Hubbard's actions complied with her duty of ordinary care. As stated by the trial judge:

> if the jury believed that it was windy and cold and she was distracted and they were hurrying because of that, and if the jury were to believe that she was in a group that was moving down the sidewalk and there were some people ahead of her so she couldn't see any farther than the backs of the people in front of her, and that these distractions existed, if the jury believes that and if the jury does not believe that she was guilty of negligence in moving along in this group, then the jury could find that she had exercised reasonable care under the circumstances.

In light of the evidence produced regarding the circumstances of the accident, we conclude that the trial court correctly submitted the issue of Hubbard's contributory negligence to the jury for its determination.

## II. Indemnity

Little Creek also challenges the jury's verdict in favor of Global on Little Creek's third-party motion for judgment seeking indemnity under the contract with Global.[3] Little Creek argues that because the uncontroverted evidence showed that it was entitled to indemnification as a matter of law, the trial court erred in submitting the issue to the jury. In support of its position, Little Creek asserts that there is "no issue of fact with regard to the duties assumed by Global under their contract" and that those duties included removal of objects considered to be a hazard to pedestrians. Citing Jordan's testimony that he saw the muffler but nevertheless decided not to move it or warn the pedestrians, Little Creek asserts that there is no dispute that the contract was breached. The evidence also shows, according to Little Creek, that this breach was the sole proximate cause of Hubbard's injuries. We disagree.

■ Our review of the record indicates that the factual matters were not as clear as Little Creek asserts. There is no dispute that Global was hired to provide security for the shopping center. Although the contract provided that Little Creek could request Global to "[assign] duties other than security oriented," it did not specifically define any other duties. Denise L. Curtis, the property manager for the shopping center, testified that Little Creek never assigned or requested additional duties, although she believed that "keep[ing] a general watch on the area including the safety of the

---

[3] In counts I and III of its third-party motion for judgment against Global, Little Creek charged that Global had a contractual duty to Little Creek to keep the shopping center sidewalks safe. Based on Global's breach of the contract by an act of active negligence, Little Creek asserted that it was entitled to "full indemnification" from Global for the losses it sustained as a result of Hubbard's damage award.

However, there is no term or provision in the agreement which created a *contract of indemnity* between Global and Little Creek. In fact, the agreement itself states that if, "at the request of the Client, an officer is assigned duties other than security oriented, the Client hereby assumes complete responsibility." Little Creek's basis for recovery apparently stems from breach of contract damages (measured by its loss resulting from the breach), an implied contract for indemnity, or a claim based on equitable principles of restitution. We do not consider, however, whether Little Creek actually had a legal claim to "indemnification." No party has challenged jury instruction number 25, which required Global to "indemnify" Little Creek if Global's contractual duties to Little Creek included removal of the muffler, Global breached that duty, and that breach was the sole proximate cause of Hubbard's injuries. That instruction has become the law of the case. *Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.*, 237 Va. 649, 652, 379 S.E.2d 344, 346 (1989).

area" was "implied." Betty M. Tucker, a Global employee, indicated that its employees were instructed to check for safety hazards as reflected in their daily report logs, even though these activities were not listed in the contract. However, the evidence also showed that Little Creek contracted with another corporation, Mobile Vac, to clear off debris and clean the sidewalk areas on a daily basis. When all this evidence is taken into account, reasonable people could disagree as to the precise duties Global owed to Little Creek under the contract and whether the actions of Global's employee constituted a breach of those contractual duties.

 Furthermore, the record contains testimony from a number of witnesses that the muffler was seen in various locations prior to the accident and that the property manager frequently inspected the grounds of the shopping center, possibly on the day of the accident, and was in daily contact with the president of Little Creek regarding the condition of the shopping center. This additional evidence could support a jury finding that only Little Creek's actions were negligent and that negligence was independent of any negligence attributable to Global or its employee. Accordingly, Little Creek was not entitled to indemnity from Global as a matter of law and the trial court correctly submitted the indemnification issue to the jury.[4]

### III. Jury Instructions

 Little Creek also assigns error to the rejection of jury instructions relating to its claim for indemnity from Global. Little Creek complains that the trial court erred in refusing Instruction I, an instruction stating that Global was liable to Little Creek for "all damages proximately caused by the breach of contract, if any, of its employee while acting within the scope of his employment." However, Global's liability to Little Creek for an employee's breach of contract was adequately set forth in Instruction

---

[4] Little Creek also argues that § 95 of the *Restatement of Restitution*, which provides indemnity for landowners for the negligence of their employees under certain circumstances, should be adopted by this Court. We do not consider this argument because that section does not apply to the facts of this case. Section 95 applies only to instances where both parties are liable to the injured party. *Restatement of Restitution* § 95 (1937). Here, the only party liable to Hubbard was Little Creek.

25.[5] Therefore, the trial court did not err in refusing Instruction I.

Little Creek also assigns error to the trial court's refusal to instruct the jury on the principles of intervening causation through Instructions J, K, and/or M. Without these instructions, Little Creek argues that the jury could believe that *any* negligence by Little Creek required a verdict in favor of Global regardless of whether that negligence was the cause of the accident.

Global responds that instructions on intervening cause were unnecessary because the jury was told in Instruction 25 that Global was liable to Little Creek if its breach of contract was the "sole proximate cause" of Hubbard's fall. By definition, Global argues, an intervening cause is the sole proximate cause of the accident. Therefore, intervening cause instructions were superfluous because, to find Global liable, the jury was required to find that Global's actions were the sole proximate cause; if they were not the sole proximate cause, they could not be an intervening cause.

 Global's argument may be appealing as a matter of logic but it is not persuasive on these facts. The distinctions between sole proximate cause, proximate cause, and intervening cause are specialized legal considerations that are not self-evident to members of a jury. In this case, the jury was instructed only on proximate cause. Without an instruction on either sole proximate cause or intervening cause, the jury could conclude that if two acts of negligence were committed, one by Global and one by Little Creek, there could not be a "sole" proximate cause of the accident and, under Instruction 25, a verdict against Global would be precluded. Under these circumstances, Little Creek was entitled to an appropriate instruction on intervening cause.

## IV. Conclusion

For the reasons stated, we will affirm the judgment entered in favor of Hubbard on her motion for judgment, reverse the judgment in favor of Global on Little Creek's third-party motion for

---

[5] Instruction 25 provided, in relevant part:

In the third-party claim of Little Creek against Global you shall find your verdict for Little Creek and against Global if it has proven by the greater weight of the evidence that:

1. There was a contract . . . for the direct benefit of Little Creek; and

2. Global, through its employee, breached this contract; and

3. Global's breach of this contract was the sole proximate cause of the plaintiff's fall and the damages you awarded to [Hubbard] against Little Creek.

judgment, and will remand that action for further proceedings consistent with this opinion.

*Affirmed in part,
reversed in part,
and remanded.*

CHIEF JUSTICE CARRICO, dissenting.

I would hold the plaintiff guilty of contributory negligence as a matter of law and, therefore, would reverse the judgment of the trial court. As the majority notes, the plaintiff did not see the muffler before she tripped over it, although, as the majority also notes, it " 'was out there [on the sidewalk] in plain view.' " The plaintiff admitted she did not look down as she walked across the sidewalk. It is true, however, as the majority states, that a pedestrian's failure to look down while stepping forward does not, as a matter of law, constitute contributory negligence in every case. But such failure is "one of many facts to be considered" in determining whether a plaintiff's alleged contributory negligence presents a jury issue. *City of Suffolk v. Hewitt*, 226 Va. 20, 28, 307 S.E.2d 444, 449 (1983).

Also to be considered, in my opinion, is whether a plaintiff who claims to have been distracted has "establish[ed] that his excuse for inattention was reasonable, *i.e.*, that the distraction was unexpected and substantial." *West v. City of Portsmouth*, 217 Va. 734, 737, 232 S.E.2d 763, 765 (1977). "To hold otherwise would permit a plaintiff in any case to avoid contributory negligence by showing an insignificant reason for failing to be observant." *Id.*

Here, the plaintiff offered no excuse whatsoever for her failure to see the muffler on the sidewalk ahead of her. The majority, however, overlooks this shortcoming on the part of the plaintiff and combs the record to find an excuse for her, citing the lighting, weather conditions, and presence of co-workers on the sidewalk at the time she fell. Yet, while the majority states that the intensity of the lighting at the time of the accident was described as "dim," the majority also says that the sidewalk was "lit by a bank of fluorescent lights located in an overhanging canopy." And, although the majority points out that it was raining at the time and that there was water on the sidewalk where the plaintiff fell, the majority correctly states that the fall occurred underneath the

sidewalk canopy, neutralizing any effect the rain may have had on the plaintiff's ability to see.*

Interestingly, the majority also cites the presence of "[s]ome" of the plaintiff's co-workers on the sidewalk " '[a] few steps' in front of [her]." But the majority has to admit that "none of [these] employees . . . tripped on the muffler." Perforce, these employees had to step over the muffler or walk around it, leaving it exposed, in either event, to the view of anyone walking behind them, including the plaintiff.

So, even if the plaintiff was distracted, the distraction was neither "unexpected [nor] substantial" and amounted to nothing more than "an insignificant reason for failing to be observant." *West*, 217 Va. at 737, 232 S.E.2d at 765. Hence, the plaintiff failed to "establish that [her] excuse for inattention was reasonable," *id.*, and I would hold that her failure bars her recovery.

---

* The majority also says it was very windy on the night the plaintiff fell but does not explain how the wind may have contributed to the fall.