# CIRCUIT COURT OF THE CITY OF NORFOLK

Elizabeth A. Fowlkes

v.

Towers Associates, L.P., et al.

December 1, 1995

Case No. (Law) L94-1922

By Judge Lydia Calvert Taylor

The above-referred civil suit for money damages for personal injuries was tried before a jury from October 12 to 17, 1995; the jury rendered a verdict for the plaintiff for $1.5 million. The defendants have moved to set aside the verdict as excessive, not supported by the facts, contrary to the law and the evidence, and/or based on erroneous instructions. The defendants ask this court to render judgment for the defendants or order a new trial on all issues or put the plaintiff on terms to accept a remittitur. This court declines to grant any of the defendants' motions.

This court finds that defendants' motion to set aside the verdict as contrary to the law and the evidence and for a new trial must be overruled. It further finds that the question of contributory negligence was properly submitted to the jury under instructions reflecting the facts in this case and, furthermore, that the defendants' proffered additional finding instruction was cumulative as well as an incomplete statement of the law. Finally, in this court's opinion, the verdict was reached by the jury in a fair and impartial manner based upon the facts and the law. Given that the damages awarded were supported by the evidence, the court rules that remittitur would not be appropriate in this case.

## Facts and Background

The facts will be recited in the light most favorable to the plaintiff, the non-moving party, as required upon such motions. *See, e.g., T. M. Graves Const., Inc. v. National Cellulose Corp.*, 226 Va. 164, 169-70, 306 S.E.2d 898, 901 (1983). The plaintiff was injured when she stepped backwards and fell through an open trap door in the floor of the superintendent's office on the premises of Lafayette Towers on May 13, 1992. The plaintiff was thoroughly familiar with the office, having gone through the office of the superintendent in excess of one hundred times before, but the trap door had always been closed and she was unaware of its existence. The trap door was approximately 30 inches by 30 inches and had been designed to be the same color and texture as the floor and thus to appear simply part of the floor. Furthermore, a chair had always been placed on the closed trap door, which partially obscured the area. There was no evidence that the trap door had ever been opened on any of the plaintiff's prior visits to the office, nor was there any other evidence that the plaintiff knew of or should have known of the trap door prior to the day of the accident.

On the day of the accident, the trap door had been removed and placed out of sight for access to the area beneath the floor. Two chairs had been placed on two sides of the opening (the near side and the left side), the superintendent's desk was approximately 12 to 15 inches from the far side of the opening, and a bookshelf was on the right side as the plaintiff stood in the door to the office. The parties disagree on the extent to which the two chairs blocked the plaintiff's view of the hole. However, at the defendants' request, a mocked-up scene was set up in the courtroom with the chairs, so that the jury could decide that issue for themselves.

The plaintiff testified that on the day in question, she was in a hurry and carrying a large carry-all bag and portable telephone on her right shoulder, as well as a pad and pen in her hands. She walked directly from the doorway to the superintendent's desk along a pathway that was not obstructed by the chairs in the room. As the plaintiff approached the superintendent's desk to speak with him, she passed to the left of the chairs, which were on the near and left sides of the opening. She stopped for a brief second at the left corner of the superintendent's desk, then moved to her right across the front of the desk, with her back to the hole, in order to locate a clear place to write. When she stepped slightly backwards in order to lean over to write, she fell into the opening and some six to eight feet down.

Extensive evidence was submitted on the extent of her injuries. At the conclusion of the trial, the jury found for the plaintiff in the amount of $1,500,000.00. Defendants moved to set aside the verdict as contrary to the law and evidence and for a new trial.

### Issues

In order to consider thoroughly the defendants' motions, the court has broken the motions down into three central questions to be considered. First, whether the issues of the defendants' negligence and the plaintiff's contributory negligence were properly submitted to the jury. Second, whether the additional instruction offered by the defendants on contributory negligence was properly refused. Finally, whether the verdict was so out of proportion to the damages proved at trial as to suggest that the verdict was reached other than in a fair and impartial manner based upon the facts and the law.

### 1. Contributory Negligence as a Matter of Law

The court finds that the question as to whether or not contributory negligence should have been submitted to the jury to be answered affirmatively. "Ordinarily, whether a plaintiff is guilty of contributory negligence is a jury issue. The issue becomes one of law for resolution by a court only when reasonable minds could not differ about the conclusion." *Medlar v. Mohan*, 242 Va. 162, 166, 409 S.E.2d 123, 126 (1991). Defendants argue that "[t]he opening was clearly apparent to someone using reasonable care for their own safety as required by law." Brief in Support of Motion to Set Aside Verdict and for New Trial, at paragraph 6. This court finds, however, the cases cited by the defendants in their brief to support this motion to be inapplicable to the facts in this case. Both *Tazewell Supply Co. v. Turner*, 213 Va. 93, 189 S.E.2d 347 (1972), and *Gottlieb v. Andrus*, 200 Va. 114, 104 S.E.2d 743 (1958), involved plaintiffs who were held to be contributorily negligent as a matter of law where they had fallen and injured themselves after stepping into or against a box or boxes in plain view in well-lit store aisles. Furthermore, the court in *Tazewell Supply Co.* held that under the circumstances of that case, the danger would have been apparent to the plaintiff "had she looked even casually" at any time before she fell and that the plaintiff must have done the equivalent of closing her eyes. *Tazewell Supply Co.*, 213 Va. at 96, 189 S.E.2d at 350. Plaintiff in *Gottlieb* stated that she did not see the boxes because she was looking up at cereal boxes on high shelves and was not looking at the

floor. 200 Va. at 118, 104 S.E.2d at 746-47. Plaintiff in *Tazewell Supply Co.* stated she never saw the box, before or after she fell; she admitted that had she been looking down, she would have seen the box, but she was looking at things hanging up on display. 213 Va. at 96, 189 S.E.2d at 350. The evidence in this case is not at all similar.

The facts in this case indicate that plaintiff's view of the danger in question was obstructed by chairs that had been intentionally moved to surround the opening in the floor. While an invitee must act reasonably to avoid dangers that are in fact open and obvious, she can assume that the premises are reasonably safe for her visit and need not be on the lookout for dangers that are not open and obvious. *Tazewell Supply Co.*, 213 Va. at 95, 189 S.E.2d at 349 (quoting *Comess v. Norfolk Gen'l Hosp.*, 189 Va. 229, 235, 52 S.E.2d 125, 128 (1949)). Furthermore, while people should ordinarily expect boxes to potentially be in grocery store aisles or sidewalks to be uneven, in common experience, people are not ordinarily expected to be on the lookout for open trap doors in offices. Though the plaintiff had been in the office many times before, the trap door, when closed, was designed to blend in with the floor around it. There was not even a suggestion by the defendants that the plaintiff knew or should have known about the existence of the trap door prior to the date of the injury, nor evidence that she actually saw the opening in the floor on the day of the accident. Quite the contrary, the fact that plaintiff had every reason to believe that the floor had no hole in it, due to her past visits, increases the reasonableness of her actions in not seeing a hole that she had every reason to believe did not exist.

While the chairs spaced around the opening may not have been where they ordinarily were placed, it would not be unreasonable for a casual observer to interpret them as having been moved for some other purpose, such as a conference at the superintendent's desk. Moreover, the office was highly cluttered, and given the circumstances, one could reasonably conclude that the plaintiff was not on notice to be on the lookout for the danger that befell her. In fact, defendants never even suggested that the disarray of the chairs should have alerted the plaintiff to look for a problem. Their sole contention was that the hole was visible in the exercise of ordinary care, that is, open and obvious, through the chairs. However, the jury and the court saw the chairs as both eyewitnesses stated they were placed at the time of the accident. The jury apparently found, and the court concurs, that the chairs as placed obscured the plaintiff's view of the hole as she entered and walked to the superintendent's desk.

The defendants argued at oral argument on their motions that even if her view of the hole was blocked as she walked up to the desk, she should have in the exercise of reasonable care seen the hole with her peripheral vision at the time she was standing at the desk and/or when she was sliding along the front of the desk with her back to the hole. This court finds that whether or not a reasonable person would have seen the hole with peripheral vision or should, under the circumstances, have looked to her right and back a few feet before she slid to her right, was properly submitted to the jury. The plaintiff was at the desk for a short moment and was facing forward (away from the hole) and, at the time she moved along the side of the desk and then stepped backward and fell, she was preoccupied with finding a clear space to write on the desk.[1] The jurors were walked individually through a mock-up of the scene, and counsel for both the plaintiff and the defendants had the opportunity to argue as to what a reasonably careful person should have seen. It was up to the jury as the fact finder to determine whether or not plaintiff's or defendants' characterization of the scene was accurate, and there was more than ample evidence for the jury to reject the defendants' characterization that the plaintiff was not acting as a reasonably careful person would have under the circumstances.

Under the facts and circumstances of this case, the court finds the decisions in *Bassett Furniture Indus. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), and *Little Creek Investment Corp. v. Hubbard*, 249 Va. 258, 455 S.E.2d 244 (1995), to be particularly persuasive. In *Bassett*, the Virginia Supreme Court held that the matter of contributory negligence was properly submitted to the jury where a construction worker stepped backwards into a hole in a floor that was difficult to see due to poor lighting, which may have camouflaged the hole. 216 Va. at 907-08, 224 S.E.2d at 329-30. Likewise, in *Little Creek Investment Corp.*, the court held that the issue of contributory negligence was properly submitted to the jury where the hurried and distracted plaintiff tripped over a muffler on the sidewalk under conditions that included wind, rain, and dim lighting. 249 Va. at 264, 455 S.E.2d at 248.

The court finds the facts in this case more than sufficient to justify a reasonable person to conclude that the plaintiff was not contributorily

---

[1] The defendant does not contend that the plaintiff was negligent in not looking behind her when she stepped backwards, but rather that in the exercise of ordinary care, she should have seen the hole prior to stepping backwards.

negligent. In this case, the chairs could reasonably be seen as camouflaging the opening, so that a person exercising reasonable care might not see the opening behind them. Likewise, it would appear that a person in a construction area or walking on a rainy sidewalk would be on greater notice to be looking for possible dangers and pitfalls than a person in an office in which she had been many times before. There was also ample evidence that the plaintiff was in a hurry and carrying a number of items that made it more likely that she would not see the opening, even in the exercise of reasonable care. *See Little Creek Investment Corp.*, 249 Va. at 264, 455 S.E.2d at 248 (approving trial instruction involving potential finding of being in a hurry and distracted); *see also Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57-59, 419 S.E.2d 627, 631 (1992) (where the fact that plaintiff was in a hurry was considered as a factor in finding her actions reasonable under the circumstances).

## 2. *Refusal of Instruction*

As to the second issue involving the defendants' proffered additional contributory negligence instruction, the court finds that the instruction was properly denied. The defendants, relying upon *Tazewell* and *Gottlieb*,[2] argue that the following instruction was improperly denied: "If you find that the alleged dangerous condition was open and obvious to a person exercising reasonable care for her own safety, then you shall find your verdict for the defendants." At the outset, it should be noted that the defendants sought to have this instruction added after the parties had already agreed upon the bulk of the instructions, including a number of instructions on the issue of contributory negligence, such as instructions 13, 14, 18, and 24.

Where there is "no other finding instruction submitting the issue of contributory negligence . . . a defendant is entitled to a finding instruction embodying the defense of contributory negligence where it correctly propounds the law and is supported by the evidence." *Commonwealth v. Coolidge*, 237 Va. 621, 625, 379 S.E.2d 338, 341 (1989) (citing *Bowers v. May*, 233 Va. 411, 413-14, 357 S.E.2d 29, 30 (1987)). Of obvious importance is the requirement that, in order to be entitled to an instruction, the instruction at a minimum must correctly propound the law. While the

---

[2] The defendant cited these two cases involving plaintiffs found to be contributorily negligent as a matter of law. The defendant has cited no cases in its brief in support of its motion discussing when a party is entitled to a jury instruction.

defendants argue that the offered instruction was a "proper statement of the law," the court finds that it was not. The Supreme Court of Virginia has explicitly held that a finding instruction that attempts to submit to the jury the issue of contributory negligence, in failing to see an open and obvious danger, must include a statement placing the burden upon the defendant. *Coolidge*, 237 Va. at 625, 379 S.E.2d at 341, n.* (noting that the failure to state the burden was error). "It is a well-established rule that under normal circumstances, a trial court is under no obligation to amend or correct an instruction that contains a misstatement of law." *Morse v. Commonwealth*, 17 Va. App. 627, 636, 448 S.E.2d 145, 151 (1994).[3]

At oral argument, the defendants, while admitting that the proffered finding instruction failed to include a statement of the burden, argued that including the burden was not necessary since it had already been given in other instructions. This argument, however, merely serves to highlight the potential confusion had defendants' offered instruction been given as offered. *Coolidge* makes clear that in order to avoid such confusion, a finding instruction should itself include a statement of the burden in order to be complete. 237 Va. at 625, 379 S.E.2d at 341, n. *.[4] Furthermore, the general finding instruction agreed upon by the parties did not explicitly state the burden, and, therefore, the jury could not extrapolate the burden from the general finding instruction already given.[5] Instruction 18 did have a statement that the defendants had the burden of proving contributory negligence, but the offered instruction made no mention of contributory negligence. By giving an additional finding instruction using "open and obvious" language alone, the court could have confused the jury into believing that this was a separate issue from contributory negligence. Thus, even if one ignores the mandate of *Coolidge* that the burden must be

---

[3] The only exception, requiring a court to correct a defective instruction, is when a principle of law "is materially vital to [the] defendant in a criminal case . . . ." *Morse v. Commonwealth*, 17 Va. App. 627, 636, 448 S.E.2d 145, 151 (1994) (quoting *Whaley v. Commonwealth*, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973)).

[4] Additionally, the offered instruction did not include any reference to the fact the plaintiffs' negligence must have proximately caused the accident. Although *Coolidge* does not make reference to proximate cause, it is part of the standard instructions. *Virginia Model Jury Instructions*, 3.050 at I-67.

[5] One could argue, of course, relying upon *Coolidge*, that the general finding instruction given in this case was deficient, but the instruction was given by agreement, as well as in the context of the language of other instructions, at least one of which stated that the burden of proving contributory negligence was on the defendant.

part of the finding instruction itself, the language of the offered instruction did not make clear how it fit in with the other instructions, thus only serving to confuse the jury. The jury's confusion would be particularly heightened by having multiple finding instructions on the same issue.

In addition, even if one assumes *arguendo* that the defendants offered an instruction that was a proper statement of the law, while the court may have granted it, it would not have been necessary to do so in order to properly instruct the jury in this case. A defendant is entitled to a finding instruction on contributory negligence where it correctly propounds the law, is supported by the evidence, *and no other finding instruction has been submitted* on the issue of contributory negligence. *Coolidge*, 237 Va. at 625, 379 S.E.2d at 341. In this case, prior to offering an instruction specifically on the issue of open and obvious dangers, the parties had already agreed upon a finding instruction as well as other instructions on contributory negligence. *See* instructions 13, 14, 18, and 24. "The multiplication of instructions does not tend to enlighten the jury and is a practice to be avoided. Where the jury has been sufficiently and correctly instructed on any point, it is not error to refuse further instructions on that point, however correct a tendered instruction may be." *Wilson v. Brown*, 136 Va. 634, 637-38, 118 S.E. 88, 89 (1923) (citation omitted); *see also Kirby v. Moehlman*, 182 Va. 876, 886, 30 S.E.2d 548, 552 (1944). There should be only one finding instruction on contributory negligence in each case, and that instruction should be adapted to fit the facts in the particular case. *Virginia Model Jury Instructions*, 3.050, I-68 (comment to standard jury instruction). It may have been appropriate to grant one finding instruction adapted to the facts of the case, including the open and obvious language, if the instruction were a correct statement of the law. However, the offered additional finding instruction, in addition to being an incorrect statement of the law, would have created a confusing multiplication of finding instructions where only one finding instruction was necessary.

Furthermore, the court finds in this case that the jury was sufficiently instructed as to the law and that counsel for the defendants did in fact ably make clear their viewpoint as to the importance that attaches to an open and obvious danger. *See Kirby v. Moehlman*, 182 Va. at 886, 30 S.E.2d at 552. At the defendants' counsel's request, each juror individually had the opportunity to walk through in single file a demonstration of the accident scene, using the same chairs and with a piece of black paper laid on the floor that was the size of the opening. Counsel for the defendants, in closing, referred to that walk to the jury and stressed the defense view-

point that the danger was open and obvious to anyone exercising reasonable care. This court finds, as the court did in *Kirby*, that under the circumstances, the jury could not have been misled, but rather that the jury simply did not accept the defendants' viewpoint that the danger was open and obvious to a person exercising ordinary care. 182 Va. at 886, 30 S.E.2d at 552 ("We do not think that the jury could have been misled, and we may with confidence assume that able counsel hammered down on the jury the importance, from the viewpoint of the defendant, which attaches to a danger open and obvious.").

Nor does this court accept the defendants' argument that somehow by having "open and obvious" language in the instruction as to defendants' duties that the jury would conclude that reasonable people need not avoid open and obvious dangers. Quite simply, defendants' argument has no merit and flies in the face of both the entire thrust of the evidence and the arguments of the plaintiff and defendants in this case. Both sides argued the pros and cons of defendants' negligence only on the second duty of the premises owner: that of the duty to warn of a danger, with the caveat that the duty did not exist if the danger was open and obvious. On the issue of defendants' liability, neither of the parties argued, except perhaps in passing, that the defendants had exercised or failed to exercise reasonable care. The entire trial focused on the issue of whether there was a failure to warn of a danger and whether the danger was open and obvious. On the issue of defendants' liability, neither of the parties argued, except perhaps in passing, that the defendants had exercised or failed to exercise reasonable care. The entire trial focused on the issue of whether there was a failure to warn of a danger and whether the danger was open and obvious. To accept defendants' conjecture of jury confusion, the court would have to assume that the jury (1) believed the danger to be open and obvious; (2) found the defendants to be negligent on a theory not argued by the parties; and then (3) concluded that reasonable people do not avoid open and obvious dangers. This court finds that under the circumstances, there is no evidence to support the conclusion that the jury was in fact misled, let alone so misled so as to reach such unsupported and counter-intuitive conclusions.

The court does not hold here that it would have, under no circumstances, accepted a correctly proffered instruction with open and obvious language or accepted a modification of one of the jury instructions already given on the issue. Rather the court finds that no instruction correctly stating the law was offered by the defendants, and that under the circum-

stances, the jury was amply instructed on the defendants' legal theory of the case.

### 3. Refusal to Order New Trial or Remittitur

In the final question considered by this court, the court finds that either granting a new trial or ordering remittitur would be inappropriate in this case. Virginia Code §§ 8.01-383 and 8.01-382.1 provide that the trial court has the power to order remittitur where appropriate. "The law has wisely placed in the hands of the trial judge the power to exercise his sound discretion in supervising the verdicts of juries to prevent miscarriages of justice." *Smithey v. Sinclair Refining Co.*, 203 Va. 142, 148, 122 S.E.2d 872, 877 (1961). The Supreme Court of Virginia has spelled out the criteria to consider in determining whether remittitur would be appropriate:

> [I]f it appears that the verdict is so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption, or prejudice, or has misconceived or misunderstood the facts or the law, or if the award is so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision, then it becomes the plain duty of the judge, acting within his legal authority, to correct the injustice.

*Smithey v. Sinclair Refining Co.*, 203 Va. at 146, 122 S.E.2d at 877. Every case must be judged on its own merits, and a verdict supported by the evidence and reached by a fair and impartial jury should not be disturbed merely because the judge would have awarded a lesser amount had he or she been a member of the jury. *Miller v. Vaughan Motor Co.*, 207 Va. 900, 904-5, 153 S.E.2d 266, 269 (1967).

There was significant evidence to support a substantial verdict based upon the type of harm and the permanence of the injuries. The plaintiff suffers from multiple severe and permanent injuries throughout her body arising out of her fall. At the time of the accident, the plaintiff was in excellent health and condition. She was approximately forty, and according to statutory tables, had a life expectancy of thirty-six years. She was working full time, and there was evidence that the plaintiff loved working and had a strong work ethic all her life. The evidence as to the percent of total body disability from her back injury alone varied from 10% (defendants' estimate) to 15% (plaintiff's estimate). There was no dispute as to the permanence of the injuries, nor did any of the doctors testify that any

of her injuries were the result of prior accidents. Her principal treating orthopaedic surgeon testified that, as she was unable to sit, stand, or ride via car for more than fifteen or twenty minutes at a time, she was in effect unable to get and keep any job.

The plaintiff now suffers from a severe limp and is unable to sit or stand for any appreciable period of time. She suffers from constant and continuing back and shoulder pain. The plaintiff has had eight painful operations to the face and jaw and is permanently disfigured. There was also evidence of probable necessary future disc surgery, which plaintiff's evidence showed would put her totally out of service for six to nine months. Hardly any part of her life was left unaffected. Her jaw problems give her headaches and problems with her mouth. She has problems with talking, sitting, driving, and standing. The injury has affected her personal quality of life in all aspects, from humiliation arising out of her limp and disfigurement to a detrimental impact on her sex life. Additionally, the plaintiff testified vividly to the terrifying nature of the accident, in which she found herself totally unexpectedly falling, reached out in terror to stop her fall, struck her face on the concrete, and then fell six to ten feet before hitting her back upon a stool, and then lay in her own blood and mud, unable to understand what had happened.

Finally, the plaintiff offered extensive evidence on economic damages. Medical bills were established to be approximately $130,000.00 with evidence of future bills running from $50,000.00 to $70,000.00. Neither past nor future medical bills were disputed. Plaintiff had evidence of lost past and future wages of upwards of $300,000.00. In total, the plaintiff submitted evidence to support a finding of economic damages for over $500,000.00 without counting the separate element of loss of future earning capacity.

The defendants have brought to this court's attention a number of cases where a trial court's decision to order a new trial or remittitur has been upheld. However, this court does not find these cases applicable in this situation. In *Rutherford v. Zearfoss*, 221 Va. 685, 689, 272 S.E.2d 225, 227 (1980), for example, in very brief summary the trial court expressly found that the jury was influenced by sympathy and noted the significant importance of the fact that, in that case (unlike this case's extensive evidence), there had been no evidence of medical expenses, cost of treatment, or loss of earning capacity. Likewise, in *Reel v. Ramirez*, 243 Va. 463, 467-68, 416 S.E.2d 226, 229 (1992), the court upheld an order for a new trial vacating a $200,000.00 jury verdict where there was no lost wages and a

limited amount of medical expenses ($14,500.00) and only some continuing pain and discomfort from a 5% disability to the knee. Similarly, in *Caldwell v. Seaboard System RR.*, 238 Va. 148, 158, 380 S.E.2d 910, 915 (1989), *cert. denied*, 493 U.S. 1095 (1990), the court upheld an order of remittitur of $500,000.00 of a $1.5 million verdict where the evidence did not indicate any substantial pain and suffering arising out of a partial hearing loss and no evidence that the plaintiff would not be able to obtain a new job, in contrast to the evidence on both points in the instant case.

Finally, in *Bassett Furniture Indus. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), the Supreme Court of Virginia upheld an order of remittitur from $833,000.00 to $550,000.00 where the trial court had considered appropriate factors, including the proportion of non-economic damages to economic damages, which was reduced in proportion from roughly 5/1 to 2.3/1.[6] In upholding the remittitur, the Supreme Court of Virginia noted, however, that on the basis of the record, a higher verdict "may have been sustainable" but that the trial judge had observed the case in ways that cannot be "reproduced on the cold printed page." *Id.* 216 Va. at 913, 224 S.E.2d at 333. In the instant matter, the jury heard and considered evidence of a substantial and permanent total disability and extensive physical and emotional pain and suffering. Extensive evidence was offered as to past and future medical expenses and lost wages (past and future), as well as loss of earning capacity. While there is no set formula, this court notes that the non-economic damages in this case were only roughly twice the amount of economic damages.

Having considered the facts and guidance of previous decisions, this court finds that ordering a new trial or granting remittitur would be inappropriate in this case. *Cf. Edmiston v. Kupsenel*, 205 Va. 198, 203, 135 S.E.2d 777, 781 (1964) (the court reversed the trial court's granting of remittitur where the court found the sum awarded not to be "conscience shocking" as a matter of law). The sum awarded in this case did not shock the conscience of this court. This verdict was not so excessive as to create either an impression that the jury had been influenced by passion or prejudice or that the jury must have labored under a misinterpretation of fact or

---

[6] Economic damages in *Bassett* were held to be approximately $167,000.00. *Id.* It should also be noted that in comparing amounts awarded in cases such as *Bassett* with awards made today, nearly twenty years later, one should consider the effects of inflation on the relative dollar amounts. The trial court in *Bassett* might well not support remittitur on the same facts today, given the lessened value of money today, twenty years later.

law. This court does not find a shred of evidence of sympathy or bias on the part of the jury. To the contrary, the jury was attentive to the evidence, thoughtful, seemed to follow closely the court's instructions, and to consider all the evidence carefully and dispassionately. Nor does this court find any other evidence to support a finding that the jury reached its verdict other than in a fair and impartial manner based upon the facts and the law.

## Conclusion

For the above-stated reasons, the court declines to grant any of the defendants' motions. The court on November 29, 1995, entered an order, as announced at oral arguments the prior day, entering judgment on the October 17 jury verdict, with interest from the date of the jury verdict.