# CIRCUIT COURT OF WARREN COUNTY

Janet Maucione

 v.

Donald R. Merritt, Sr.

January 18, 2005

Case No. (Law) 03-267

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Defendant's motion to set aside the Plaintiff's verdict on the grounds that the trap door into which the plaintiff fell was an open and obvious danger, so she was contributorily negligent as a matter of law. Nikolas E. Parthemos, Esquire, appeared for the Plaintiff; and Daniel L. Fitch, Esquire, appeared for the Defendant. The parties had previously filed memoranda of authorities which have been considered by the Court.

The abstract concept of the reasonable person is the slippery standard upon which modern tort law is premised; it is a chameleonic concept, which is always colored by the circumstances in which it is applied. Its tensile limits are frequently not clearly defined, so they are constantly tested. The Defendant relies primarily on pedestrian sidewalk fall cases to support his argument that, assuming that the condition causing the fall is open and obvious and in plain view, the Plaintiff *has an absolute duty to see the object or condition, unless the plaintiff is distracted by conditions beyond his control.* However, this is not a pedestrian sidewalk case, but rather it is a trap door case. The assessment of the plaintiff's duty to maintain a proper lookout is always relative to the circumstances. Factors like lighting, the plaintiff's familiarity with the premises, the size and location of the object causing the accident, and the plaintiff's condition at the time of the accident are all material factors to be considered, and are all factors which are frequently both case specific and result dispositive.

2

In this case, there is no appellate case or statute squarely on point setting the standard of care so the jury was instructed on the general standard of care of a reasonable person to maintain a proper lookout under the circumstances.

> The chief advantage of this standard of the reasonable man is that it enables the triers of the fact who are to decide whether the actor's conduct is such as to subject him to liability for negligence, to look to a community standard rather than an individual one, and at the same time to express their judgment of what that standard is in terms of the conduct of a human being. The standard provides sufficient flexibility, and leeway, to permit due allowance to be made for such differences in individuals as the law permits to be taken into account, and for all of the particular circumstances of the case which may reasonably affect the conduct required, and at the same time affords a formula by which, so far as possible, a uniform standard may be maintained.

Restatement (Second) of Torts, § 283, comment c.

As typical of the law, the difficulty arises in applying the abstract legal concept of the reasonable person to the facts of a specific case. The standard of conduct of a reasonable man in negligence cases is frequently set by a legislative enactment, such as the rules of the road in Title 46.2 of the Code of Virginia. Where, as in this case, the conduct is not prescribed by a statute or regulation, "an appellate court either declares that certain conduct is so clearly negligent or not negligent . . . that the jury may not declare otherwise, or else it rules that the question is sufficiently open to make it proper for the trial court to leave it to the opinion of the jury." Restatement (Second) of Torts, § 285, comment g.

The reasonable man is "a model of all proper qualities, with only those human shortcomings and weaknesses which the community will tolerate on the occasion, `this excellent but odious character stands like a monument in our Courts of Justice, vainly appealing to his fellow citizens to order their lives after his own example'." W. Page Keeton et al., *Prosser and Keeton on Torts* § 32 (4th ed. 1984), quoting A. P. Herbert, *Misleading Cases in the Common Law*, 1930, 12-16. "As to his physical characteristics, the reasonable person may be said to be identical with the actor." *Id.* But as to the mental peculiarities or capacity of the reasonable adult person, "The law takes no account of the infinite varieties of temperament, intellect, and education which make the internal character of a given act so different in different men." *Id.* quoting Holmes, *The Common Law* (1881), p. 108. While this is easy for a cool, legal intellect like

Justice Holmes to abstractly write ensconced in his office, it is probably rarely ignored by a jury.

In lookout cases, the courts applying Virginia law have recognized the relative relationship between the particular circumstances and the duty to maintain a reasonable lookout and have found that the failure to maintain absolute attention to the path or road ahead and to see a potential danger is not necessarily fatal to the plaintiff's right to recover. In *Nicholson v. Stroup*, 249 F.2d 874, 877, 878 (4th Cir. 1957) (applying Virginia law), the Fourth Circuit described the relative nature of a pedestrian's duty to maintain a reasonable lookout for her own safety:

> Nicholson's conduct was not so plainly and decisively negligent as to justify its being so characterized as a matter of law. As Mr. Justice Holmes remarked, "A choice may be mistaken and yet prudent." *Kane v. Worcester Consolidated St. Ry.*, 1902, 182 Mass. 201, 65 N.E. 54.

Lighting, familiarity with the premises, and the size and shape of the object or condition are all factors which are considered in assessing whether the plaintiff was contributorily negligent in failing to see an object which could have been seen. Consequently, the plaintiff's failure to see a muffler on the sidewalk, *Little Creek Investment Corp. v. Hubbard*, 249 Va. 258 (1995), or to see a one foot by two foot hole in the floor, *Bassett Furniture Indus. v. McReynolds*, 216 Va. 897 (1976), have been held to be jury issues. Similarly, in *Reams v. Doe*, 236 Va. 237, 239, 372 S.E.2d 495 (1988) (auto case), the Virginia Supreme Court noted the relative nature of the duty to maintain a lookout for one's own safety and stated that: "The trial court erroneously characterized the duty of a proper lookout as a duty to see, rather than a duty to look with reasonable care and to heed what a reasonable lookout would have revealed."

Where the condition of the floor is at issue in a premises liability case, "the question is not whether a reasonably prudent person would have seen the object or defect had he or she looked but whether a person using ordinary care for his or her own safety under similar circumstances would have looked down at the floor." 62A Am. Jur. 2d, *Premises Liability*, § 796. "Plaintiffs falling into open trap doors on business premises are generally found not to be negligent since persons entering business premises are not expected to look for openings in the floor, and in the absence of notice of danger from a trap door or other opening in the floor, customers have the right to assume that the floors are free from such dangers." *Id.* at § 813.

Trap doors present a particularly insidious condition, because, most of the time, they are closed and innocuous, but, on the rare occasion when they are open, they are literally a trap for the unwary. Consequently, where a person falls through a trap door, the issue of contributory negligence is generally for the jury to decide. *See Fowlkes v. Tower Assoc., L.P.*, 37 Va. Cir. 389 (Norfolk 1995) (motion to set aside plaintiff's verdict refused where plaintiff who was carrying objects and familiar with premises fell into open thirty inch by thirty inch trap door). In the case at bar, as in *Fowlkes*, Maucione was carrying something when she fell, she was traveling a route that she had traveled many times before without incident, and she had never noticed the trap door before she fell into it. Maucione was carrying a trash bag which obstructed her view of the way in front of her, she was walking from bright light into a more dimly lit alcove, and, while she was looking ahead, she did not see the open pit in front of her. Had she been strolling down the street unencumbered like the Plaintiff in *West v. City of Portsmouth*, 217 Va. 734 (1977), which the Defense relies upon as being on all fours, then the result would be different. *See, e.g. Schlossberg v. Brugh*, 167 Va. 49 (1936) (plaintiff who tripped on a sidewalk over an open iron door leading from the sidewalk to the basement was contributorily negligent), and *Staunton v. Kerr*, 160 Va. 420 (1933) (plaintiff who failed to see two foot by seven foot hole in sidewalk was contributorily negligent). But the facts of *West* and the other daylight sidewalk cases are materially different from those of the case at bar. Factual similarity depends upon the perspective of the beholder. The Defense ignores the relative nature of the duty to maintain a proper lookout and the extent to which the circumstances influence the duty to maintain a proper lookout and is trying to characterize the duty to maintain a proper lookout as an absolute duty to see, and the two are not synonymous. *See Reams v. Doe, supra.*

For the foregoing reasons, it is adjudged and ordered that the Defendant's Motion to Set Aside the Jury's Verdict and to Enter Judgment non obstante veredicto is denied.